650 So.2d 1347 (1995)
Brenda TATE
v.
SOUTHERN JITNEY JUNGLE COMPANY.
No. 92-CA-0370.
Supreme Court of Mississippi.
January 19, 1995.
Rehearing Denied March 23, 1995.
Angela Miller, Miller & Miller, McComb, for appellant.
F. Hall Bailey, Wise Carter Child & Caraway, Jackson, for appellee.
En banc.
BANKS, Justice, for the Court:
This premises liability case is on appeal from Pike County Circuit Court where the trial court granted a directed verdict in favor of Jitney. The court found that the counter in the deli upon which Tate injured her knee was open and obvious and that Jitney was entitled to a judgment as a matter of law. We have concluded that the condition here in question may be found to be unreasonably dangerous and, if so, the fact that it is readily observable, or "open and obvious," is but a fact to be considered by the jury in assessing *1348 damages under our comparative fault doctrine. We reverse and remand for further proceedings.

I.
On March 26, 1990, Brenda Tate (Tate), her husband, O.C., and daughter, Sabrina, visited the deli at the Southern Jitney Jungle (Jitney) store in McComb for lunch. While in the deli, Tate bumped her knee on the corner of a metal raised strip which ran horizontally at knee level around the deli counter. Brenda Tate filed a complaint against Jitney, alleging that the defendant had actual knowledge that the position of the strip was dangerous to persons passing. Tate alleged, in the alternative, that even if the defendant lacked actual knowledge of the defective condition of the counter, the condition had existed for so long a time prior to the happening of the accident to plaintiff, that defendant, in the exercise of due care, could and should have had such knowledge and notice.
Jitney filed its answer denying that it was negligent; however, it admitted that on or about March 26, 1990, the plaintiff reportedly struck her knee on the counter of the deli while she was in Jitney. Jitney asserted affirmatively that (1) if Tate injured her knee, she was guilty of negligence in failing to keep a proper lookout and failing to exercise reasonable care for her own safety; and (2) Tate's negligence was the sole proximate, or at least a contributing, cause of the accident in question.
As her first witness in her case in chief, Tate testified that on the day of the accident, March 26, 1990, she entered the store with her husband, O.C. Tate, and daughter, Sabrina Tate, to eat lunch at the deli. She and her family often visited the store to either eat or buy groceries. As Tate made her selection and proceeded to the cash register, she remembered that she had forgotten to get iced tea. Just as she turned around the corner to get the tea, she bumped her right knee on the sharp edge of the metal strip.
Immediately after the accident, Tate informed the cashier and deli manager, Kenneth Jennings, that she injured herself on the edge of the counter. Tate testified that Jennings instructed her to report the incident and showed her where to go, and said, "You need to report it because I have told them before that this spot needs to be fixed because someone else have (sic) gotten hurt here." Tate reported the accident to Kim Norman, the customer service representative, who placed an ice pack on Tate's leg and called the store manager. Tate stated that she declined the store manager's offer to go to the emergency room.
Tate testified that later that day, upon returning to work, the pain became unbearable and she decided to have the knee checked at Southwest Mississippi Regional Medical Center emergency room. She received a shot for pain, a temporary cast, and a prescription for pain and was told to see her family doctor for follow-up treatment. Tate's family doctor, Dr. Alva Dillon, referred her to Dr. Richard Conn, an orthopedist, who later performed surgery on her knee.
Tate testified that after the injury, her knee would give away without warning and on one occasion in February 1991, she fell and fractured her left ankle. In addition to not being able to continue working and contributing to the family income, she was not able to perform her usual housework and to drive the car as often as she had prior to the injury, and she experienced weight gain.
On cross-examination, Tate testified that she had visited Jitney numerous times before, had eaten at the deli many times, and had never hit her knee. In addition, she stated that nothing obscured her view of the deli counter as she walked through the line. However, Tate testified that there was nothing in place to warn her of the dangerous corner of the strip around the counter nor was there anything to indicate that the corner was capable of causing serious injury.
Tate's husband, O.C. Tate, testified that after the accident he noticed that the deli corner had a sharp pointed edge on it where his wife hit her knee. O.C. testified that there was nothing hiding or concealing the *1349 corner of the deli counter on the day of the accident.
Tate called Kenneth Jennings, deli manager, as an adverse witness, who testified that the deli counter had not changed during the three and one-half year period prior to Tate's accident. He stated that he recalled that prior to the accident in question, one other person bumped her knee, but that person kept on going and did not report it. Jennings noted that the one previous incident at the deli should be compared to the number of times customers bump into or knock down displays throughout the store, which happens about once or twice a week.
Tate also called Kim Norman, as an adverse witness, who testified that on the day of the accident, "Someone said that [Tate] had hit her knee and I wound up over there, I usually do the reports, and I just filled out the report saying that she had bumped her knee on the deli counter. I got some ice and we put it on her knee, and that's basically all I remember." She stated she sent the report to Warren Magee, Jitney's loss prevention man.
After Norman's testimony, the plaintiff rested and the defendant moved for a directed verdict. In granting the directed verdict, the court stated:
In Kroger [Inc. v. Ware, 512 So.2d 1281 (Miss. 1987)], the Court held that a business invitee  that a business entity owes an invitee or visitor the duty to exercise ordinary care keeping the premises in a reasonably safe condition or warning of dangerous conditions not readily apparent, which the owner or occupant knows of or should know of in the exercise of reasonable care. Now, here we have no condition that was dangerous, or there was no  no condition that was inherently dangerous or  it appears that the counter and the corner of the counter was open and obvious and could be observed and on at least twenty different occasions this Plaintiff had seen the counter, and had gone by without being injured, and there  the Court in Kroger v. Ware held there is no liability for injuries where the condition is not dangerous, or where the condition is or should be known or obvious to the invitee. In this case  in that case Mrs. Ware, in this case Mrs. Tate. In that case Mrs. Ware encountered a condition which was permanent in place, known and obvious, a factual setting bearing no resemblance to cases in which the Court had found a jury question to exist, and they held that there must be some evidence of negligence given a jury before it can determine that a defendant is guilty of negligence, and here there was none, and in that case all nine justices concurred, and in the McGovern v. Scarborough [566 So.2d 1225 (Miss. 1990)] case this case is cited as one of the two principle cases upon which Judge Boggan relied when he directed a verdict in favor of the business owner. I must admit that I was, I also thought that if you got hurt in a store you ought to be able to sue and let the jury decide whether something was dangerous or whether it was inherently dangerous and so forth, but in Kroger v. Ware the Supreme Court decided I was wrong; well I try not to make the same mistake twice, ... I'm going to sustain the motion for a directed verdict.
In the court's final judgment filed March 19, 1992, a directed verdict was granted for Jitney and the case was dismissed with prejudice. This appeal followed.

II.
This Court has determined that where a motion for a directed verdict is made at the close of the plaintiff's case-in-chief, the trial court should look "solely to the testimony on behalf of the opposing party; if such testimony, along with all reasonable inferences which can be drawn therefrom, could support a verdict for the party, the case should not be taken from the jury." Biloxi Regional Medical Center v. David, 555 So.2d 53, 57 (Miss. 1989) (quoting Hall v. Mississippi Chemical Express, Inc., 528 So.2d 796, 798 (Miss. 1988)). The motion should be denied unless the plaintiff's evidence is so lacking that reasonable jurors would be unable to *1350 reach a verdict in favor of that party. Wilner v. Mississippi Export Railroad Co., 546 So.2d 678, 681 (Miss. 1989). On review, this Court must consider the evidence in that same light. Guerdon Industries, Inc. v. Gentry, 531 So.2d 1202, 1205 (Miss. 1988).
Tate contends that since the defective corner of the counter was not known or open and obvious, Jitney had a duty to warn her of the hidden or concealed perils of which it knew or should have known in the exercise of reasonable care. Tate argues that since there was testimony that another customer bumped her knee on the counter, Jitney knew or should have known of the dangerous condition of the counter. Tate relies on Bell v. City of Bay St. Louis, 467 So.2d 657 (Miss. 1985), to support the proposition that whether or not the sharp edges of the counter were an unreasonably dangerous condition is a jury question.
In Bell, the plaintiff slipped and fell on grass and debris left on a city sidewalk by city maintenance personnel and broke her legs. The city denied that the debris was left on the sidewalk. Bell, 467 So.2d at 659. At trial, the court granted the city's request for a jury instruction that advised the jury that contributory negligence on the plaintiff's part would bar recovery, even if the city was found to have been negligent. Id. The Court held that under Mississippi's comparative negligence statute, contributory negligence diminishes but does not bar a plaintiff's recovery. Bell, 467 So.2d at 664. In reaching its decision, the Court explained that "[w]here a defendant negligently creates an unreasonably unsafe condition in an area where the plaintiff has every right to be, that defendant may not escape liability by arguing that the condition was open and obvious." Id. at 664. Moreover, "conditions are either open and obvious or not open and obvious. Common sense and experience negates an either/or categorization of such conditions. Just how open and obvious a condition may have been is a question for the jury, in all except the clearest cases." Id. (citing Lancaster v. City of Clarksdale, 339 So.2d 1359, 1360 (Miss. 1976); Wilson v. Kirkwood, 221 So.2d 79, 81 (Miss. 1969)).
In response, Jitney argues that in a situation as in the instant case, where the condition encountered by Tate was permanent, in place, known and obvious, there is no factual basis supporting a negligence claim that is proper for resolution by a jury. Jitney asserts that since Tate had previously visited the Jitney deli at least twenty times, she should have exercised better care for her own safety.
Jitney asserts that there are numerous other cases to support its proposition that the state of the law in Mississippi is such that an invitee cannot recover where there is a permanent, open and obvious object. See e.g. Mercy Regional Medical Center v. Doiron, 348 So.2d 243 (Miss. 1977) (steps without handrail); Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473 (Miss. 1967) (sidewalk seven and one-half inches above parking lot); City of Greenville v. Laury, 172 Miss. 118, 159 So. 121 (1935) (crevice in street approximately one to three inches wide and eighteen inches to two feet deep). In each of these cases, this Court found that the object or condition causing the harm was not of such a character as to make the premises unsafe for use by persons exercising reasonable care for their own safety. "[W]here the invitee knows or should know of an apparent danger, no warning is required." Wilson v. Allday, 487 So.2d 793, 795 (Miss. 1986); Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473 (Miss. 1967). The invitee is required to use that degree of care and prudence that a person of normal intelligence would exercise under the same or similar circumstances. General Tire & Rubber Co. v. Darnell, 221 So.2d 104, 107 (Miss. 1969).
More specifically, Jitney contends that a trilogy of past open and obvious decisions rendered by the Court requires the Court to sustain the trial court's grant of a directed verdict against Tate. McGovern v. Scarborough, 566 So.2d 1225 (Miss. 1990); Kroger, Inc. v. Ware, 512 So.2d 1281 (Miss. 1987); Bell v. City of Bay St. Louis, 467 So.2d 657 (Miss. 1985).
In McGovern v. Scarborough, 566 So.2d 1225 (Miss. 1990), this Court affirmed a directed *1351 verdict in favor of a store owner after the customer tripped on the store's threshold and received injuries. The evidence revealed that the store owner had previously replaced the door's threshold, which had the effect of raising the threshold three quarters of an inch. In reaching its decision, this Court noted that a case should never be taken from a jury "if, from the facts favorable to the party adversely affected together with all reasonable inferences therefrom, it can be said that a rational jury could find in his favor." Id. at 1228. However, the Court determined that the evidence was not sufficient to support a finding that the doorway in question constituted a dangerous condition. The Court reasoned that
A person entering the building from the sidewalk through this door was obliged to step up two to three inches in any event. By any stretch of the imagination can it be said that the entrance to this building was not reasonably safe? And, it is impossible to envision this doorway as creating a danger of some kind, in some way different from thousands of like doorways. Moreover, it was open and obvious.
Id. at 1228. (emphasis in original).
In Kroger, a store customer who tripped and fell in the parking lot of a Kroger store, testified that she was aware of the curb, but fell when her trailing foot failed to clear the curb, which was approximately six inches high and six inches wide. Kroger, 512 So.2d at 1282. The jury returned a verdict in favor of the plaintiff and Kroger appealed. This Court reversed and rendered finding that the plaintiff failed to show any negligence other than her own. Id. The Court reasoned that "Ware encountered a condition, which was permanent, in place, known, and obvious  a factual setting bearing no resemblance to cases in which we have found a jury question to exist." Id.
The trial court, relying on Kroger and McGovern, supra, found that the counter upon which Tate injured her knee was open and obvious and granted a directed verdict for the defendant. In Tharp v. Bunge Corp., 641 So.2d 20 (Miss. 1994), however, we recognized that the open and obvious doctrine is not a complete defense to negligent actions in premise liability cases where the condition complained of is unreasonably dangerous.
This case can be distinguished from Kroger, McGovern, and other cases which Jitney relies on. Those cases involved dangers which are usual and which customers normally expect to encounter on the business premises, such as thresholds, curbs and steps. Here there is a claimed physical defect on the defendant's premises condition which may be found to be unusual and unreasonably dangerous, notwithstanding the fact that it might have been observable.
The deli counter, as evidenced by the photographs, has sharp, pointed, and/or jagged edges. The edge in question is under the counter, at knee level and out of the normal line of sight from which one is generally expected to observe or expect as he or she exercises normal care for his or her safety. It does not appear to be a condition that one would normally encounter. Leaving aside the question whether on these facts the condition could be deemed "open and obvious" as a matter of law, there is, at a minimum, a jury question of Jitney failing to maintain the premises in a reasonably safe condition. The trial court erred, therefore, in granting a directed verdict. Tharp, 641 So.2d at 27.

III.
For the foregoing reasons the judgment is reversed and this matter is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
SULLIVAN, PITTMAN, and McRAE, JJ., concur.
DAN M. LEE, P.J. concurs in result only.
SMITH, J., dissents with separate written opinion joined by HAWKINS, C.J., and PRATHER, P.J., and JAMES L. ROBERTS, Jr., J.
*1352 SMITH, Justice, dissenting:
This Court should never have decided Tharp v. Bunge Corp., 641 So.2d 20 (Miss. 1994) in the manner that it did. That decision somewhat curtailed a long standing, clearly defined defense which property owners could rely upon if they kept their premises in a reasonably safe condition and when made aware of a dangerous condition not readily apparent to an invitee, were required to promptly warn invitees of such condition. Caruso v. Picayune Pizza Hut, Inc., 598 So.2d 770, 773 (Miss. 1992). Jerry Lee's Grocery, Inc. v. Thompson, 528 So.2d 293 (Miss. 1988), J.C. Penney Co. v. Sumrall, 318 So.2d 829, 832 (Miss. 1975), McGovern v. Scarborough, 566 So.2d 1225 (Miss. 1990), Kroger, Inc. v. Ware, 512 So.2d 1281 (Miss. 1987), Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473 (Miss. 1967).
The majority claims that this case can be distinguished from Kroger, McGovern, and other cases which Jitney Jungle relies upon. In an attempt to distinguish this case from those cited above, the majority writes that those cases involved dangers which are usual and which customers normally expect to encounter on the business premises, such as thresholds, curbs and steps. Then the majority tells us that the claimed physical defect on Jitney's premises may be found to be "unusual and unreasonably dangerous, notwithstanding the fact that it might have been observable."
Herein lies the danger in the complete abolishment of the open and obvious danger as a defense as was done by this Court in Tharp. Admittedly, an argument could be made that the facts in Tharp indicated that the tarpaulin which had been installed for a long period of time, could possibly constitute a permanent hazard to an invitee, even though the hazard was obvious and the invitee had encountered the condition on numerous prior occasions. However, there was nothing unfair about the open and obvious rule. We should have continued to allow the rule on a case by case basis. The facts of some cases would justify imposing the defense while others would not. Sometimes the facts would support absolutely no negligence whatsoever by a property owner, hence summary judgment would be proper. However, on other occasions, a jury issue on disputed evidence would be established, thus the issue of negligence would properly be allowed for the jury to determine. Tharp should simply have been made fact specific to that case alone.
Contrary to the majority, I see no difference in this case than McGovern, Kroger, and Stanley. In Kroger, the customer tripped on a curb and fell. The customer had frequently visited the store, was aware of the curb, but fell when her trailing foot failed to clear the curb. The jury returned a verdict for the plaintiff and Kroger appealed to this Court. This Court stated:
This action represents such a clear case, where Ware not only was aware of the curb, but also stepped over it with one foot before she fell. Cf. [First Nat. Bank of Vicksburg v.] Cutrer, 214 So.2d [465] at 466 [(Miss. 1968)] (slip and fall, when ascending "concrete riser" to enter a bank: no liability), Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473, 477 (Miss. 1967) (slip and fall, when descending a sidewalk curb, painted yellow: no liability). Indeed, Ware encountered a condition, which was permanent, in place, known, and obvious  a factual setting bearing no resemblance to cases in which we have found a jury question to exist. Wilson [v. Allday], 487 So.2d [793] at 798 [(Miss. 1986)] (unseen pothole), Bell v. City of Bay St. Louis, 467 So.2d 657, 664 (Miss. 1985) (grass and debris), Cook v. Chow, 223 So.2d 521, 522 (Miss. 1969) (fresh pork sausage).
In J.C. Penney Co. v. Sumrall, 318 So.2d 829, 832 (Miss. 1975), the Court stated, "[T]here must be some evidence of negligence given a jury before it can determine that a defendant is guilty of negligence." Here, there was none.
512 So.2d at 1282.
Kroger involved the same circuit judge presiding over this case. The trial judge *1353 noted such and stated he had been reversed by this Court for allowing the issue of negligence to go to the jury in Kroger. In sustaining the motion for a directed verdict in favor of Jitney, the trial judge vowed ... "I'm not going to make that mistake again." Little did he suspect that this Court would reverse its precedential position on this issue.
In the case sub judice, the proof showed Tate bumped her knee on a railing located knee level on the deli counter at the Jitney store. Tate was a regular customer having visited the same lunch counter on some twenty prior occasions. She had already walked around the counter moments before making a return trip around the counter whereupon she bumped her knee. As in Kroger, the knee she bumped was her trailing knee, not the leading knee. Tate also admitted there was nothing obstructing her view of this counter. In Mercy Regional Medical Center v. Doiron, 348 So.2d 243 (Miss. 1977), a case involving the question of whether the hospital should have provided a handrail for people using steps, this Court concluded that the absence of a handrail did not constitute negligence. This Court held:
Any defect, therefore, was not in the step but in the stepping. No negligence may be predicated upon the construction or maintenance of the step in question.
Id. at 244 quoting Supreme Instruments Corp. v. Lehr, 190 Miss. 600, 627, 1 So.2d 242, 245 (1941).
The object in question in this case, the deli counter, according to the majority, was an unusual and unreasonably dangerous condition. In fact it is a very usual and normal counter that a customer or invitee would observe in all grocery stores, practically every business in America, most private homes, and easily found on the fourth floor of the Carroll Gartin Justice Building housing this very Court.
There is absolutely no proof in the case sub judice that the deli counter was unreasonably dangerous to Tate or any other customers exercising reasonable care for their own safety. As in Mercy, the defect, if any, was not in the deli counter, but rather in Tate's manner of stepping in not exercising reasonable care by looking out for her own safety. To hold otherwise is to place upon business owners as well as private homeowners a requirement that necessitates their maintaining a premises, environment and surroundings which must guarantee at all times under all conditions, the absolute safety of all individuals on these premises, thereby making the owners insurers of the safety of all invitees. I should hope that this Court would pay strict attention to our previous long standing precedent caselaw, make a prompt about face from Tharp, and return promptly to our former common sense and logical approach to this issue.
For all of the foregoing reasons, I would affirm the directed verdict in favor of Jitney Jungle. I respectfully dissent.
HAWKINS, C.J., and PRATHER, P.J., and JAMES L. ROBERTS, Jr., J., join this opinion.