655 So.2d 892 (1995)
Shirley Elizabeth Burrell SEYMOUR
v.
BRUNSWICK CORPORATION, Mercury Marine Division.
No. 91-CA-01136-SCT.
Supreme Court of Mississippi.
May 11, 1995.
*893 Pat M. Barrett, Jr., Barrett Law Offices, Lexington, R. Ben Hogan, III, Hogan Alspaugh Samples & Pratt, Birmingham, AL, for appellant.
Richard M. Edmonson, Edmonson Biggs Mozingo & Jelliffe, David W. Baria, Edmonson Biggs Firm, Jackson, E. Thom Rumberger, Rumberger Kirk Caldwell Cabaniss Burke & Wechsler, William L. Kirk, Jr., Rumberger Kirk Firm, J. Scott Kirk, Rumberger Kirk Firm, Orlando, FL, for appellee.
Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ.

INTRODUCTION
JAMES L. ROBERTS, Jr., Justice, for the Court:
This case began with the original complaint filed on July 11, 1990, against Daniel Ingold as the driver of the motor boat involved in the accident injuring the plaintiff.[1] The complaint was subsequently amended on January 3, 1991, to add the Brunswick Corporation as an additional defendant being the manufacturer of the alleged defective and unreasonably dangerous motor without a propeller guard. The complaint was further amended on January 9, 1991, adding punitive damages, increased actual damages and more *894 precise product liability claims. Voluminous discovery followed.
Brunswick Corporation filed a motion for summary judgment and brief in support thereof on July 31, 1991. The plaintiff filed her brief in opposition to the motion for summary judgment on September 27, 1991. Judge Evans entered an Order on October 14, 1991, granting Brunswick's motion for summary judgment and dismissing the plaintiffs complaint with prejudice. Judge Evans held that the danger posed by the unguarded propeller was an open and obvious danger precluding any rights of recovery as a matter of law in Mississippi under strict liability and negligence theories involving product liability cases. We reverse and remand for further proceedings consistent with this opinion and the authority of Tharp v. Bunge, 641 So.2d 20 (Miss. 1994), Sperry-New Holland v. Prestage, 617 So.2d 248 (Miss. 1993), Whittley v. City of Meridian, 530 So.2d 1341 (Miss. 1988) and Hall v. Mississippi Chemical Exp., Inc., 528 So.2d 796 (Miss. 1988).[2]

FACTS
This case arose out of a boating accident which occurred on August 8, 1982. Beth Seymour went to Grenada Lake with Danny Ingold and six other friends to go boating. The boat was a 19 foot Glastron with a 165hp MerCruiser which Danny owned on the date of the accident.
On August 8, 1982, at approximately 6:00 p.m., Beth and two other girls jumped out of the boat to get onto an inner-tube pulled behind the boat driven by Danny. Danny subsequently pulled the three girls on the inner-tube behind the boat. Beth fell off of the inner-tube after approximately five minutes. Once Beth fell off, the other two girls dropped off as well.
The girls waited in the water for Danny to circle back around on the right and pick them up. However, Danny thought they wanted to ride the inner-tube again. He slowed the boat down and placed it in neutral as he approached the girls floating in the water 15 to 20 yards away. He then allowed the left side of the boat to pass by Beth. The other two girls were on the same side of the boat but 10 to 30 feet away.
As the boat slowly passed by Beth she did not indicate to anyone that she was ready to get into the boat but thought that Danny intended for her to get in since it was moving so slowly. She reached out to grab a ladder on the left side of the boat as the rear of the boat passed by her. Beth admitted in her deposition that she was aware of the danger of getting a body part mixed up in the running propeller and thought that it may have been running when she attempted to get into the boat, but also stated that she was unable to see the propeller beneath the water and could only hear bubbling noises as the boat passed. She reached out for the ladder on the left side of the boat and grabbed it with both hands and put her left foot on it to pull herself up into the boat. However, as she was lifting her right leg a current pulled her foot into the unguarded propeller cutting from the ankle to the toes causing her to fall back into the water as she released the ladder.
It is from the injuries Beth sustained as she was boarding the boat that she seeks compensation.

DISCUSSION OF ISSUES

I. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT AND THAT THE DEFENDANT WAS ENTITLED TO A JUDGMENT AS A MATTER OF LAW UNDER BOTH STRICT LIABILITY AND NEGLIGENCE THEORIES?
We employ a de novo standard of review in reviewing a lower court's grant of summary judgment. Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61, 63 (Miss. 1988). Thus, we use the same standard that was used in the trial court. 10 Wright, Miller & Kane, Federal Practice and Procedure § 2716 (1983 and Supp. 1988). We *895 must review all evidentiary matters before us in the record: affidavits, depositions, admissions, interrogatories, etc. The evidence must be viewed in the light most favorable to the nonmoving party who is to be given the benefit of every reasonable doubt. Smith v. Sanders, 485 So.2d 1051, 1054 (Miss. 1986); Dennis v. Searle, 457 So.2d 941, 944 (Miss. 1984). The burden of demonstrating that no genuine issue of material fact exists is on the moving party. Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61, 63-64 (Miss. 1988). However, this burden on the moving party is one of production and persuasion, not of proof. Fruchter v. Lynch Oil Co., 522 So.2d 195, 198 (Miss. 1988). A motion for summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). This Court does not try issues on a rule 56 motion, it only determines whether there are issues to be tried. In reaching this determination, this Court examines affidavits and other evidence to determine whether a triable issue exists, rather than for the purpose of resolving that issue. Comment, M.R.C.P. 56.
Also, in the case sub judice, the question before the trial court was a question of law. Our standard of review is de novo in passing on questions of law as well. Harrison County v. City of Gulfport, 557 So.2d 780, 784 (Miss. 1990). Therefore, in deciding the case sub judice, we must look at all the information de novo to determine if Judge Evans was correct in his grant of summary judgment.
At the time the summary judgment motion was ruled upon in 1991, this Court had already decided Whittley v. City of Meridian, 530 So.2d 1341 (Miss. 1988) and Hall v. Mississippi Chemical Exp., Inc., 528 So.2d 796 (Miss. 1988). In both cases, as clarified in the interim by Sperry-New Holland v. Prestage, 617 So.2d 248, 256 (Miss. 1993), this Court was well on its way in using the "risk-utility" analysis in lieu of the "consumer expectation" standard in product liability cases in Mississippi. Sperry-New Holland further clarified that the "patent danger" bar, otherwise known as the "open and obvious" defense, was no longer applicable in Mississippi under a "risk-utility" analysis and instead was simply a factor to consider in determining whether a product is unreasonably dangerous within the meaning of § 402A of the Restatement of Torts (Second). Id. at 256 fn. 4.
This Court further stated in Tharp v. Bunge Corp., 641 So.2d 20, 25 (Miss. 1994) that, "We now abolish the so-called `open and obvious' defense... ." (emphasis added). Most recently, the Court stated in Tate v. Southern Jitney Jungle Company, 650 So.2d 1347, 1351 (Miss. 1995), while referring to Bunge, that the open and obvious doctrine is not a complete defense to negligence actions in premise liability cases where the condition complained of is unreasonably dangerous. While notably Bunge and Tate were premise liability cases and the case sub judice is a products liability case, the substance of the aforementioned cases and Sperry-New Holland clearly illustrates the current state of the law in Mississippi. In sum, the current state of our tort law is that the open and obvious defense is simply a factor and not a complete bar in our jurisdiction applying comparative negligence principles.
In the case sub judice, the trial court ruled, as a matter of law, that the defendants were entitled to have the plaintiff's complaint dismissed finding that the openness and obviousness of the danger posed by a motor boat propeller precluded any possibility of recovery in Mississippi. As explained in Sperry-New Holland, openness and obviousness of a product's design is simply a factor to consider in determining whether a product is unreasonably dangerous and not a bar to recovery. Id. at 256 fn. 4. Therefore, Sperry-New Holland explicitly undermines the validity of the summary judgment granted mandating our reversal.
The grant of summary judgment was improper as the open and obvious defense is no longer a complete bar. In addition, the existence of genuine issues of material fact involving a possible design defect of the motor precludes the grant of the summary judgment in this case. Smith v. Sanders, 485 So.2d 1051, 1054 (Miss. 1986); Dennis v. Searle, 457 So.2d 941, 944 (Miss. 1984).

*896 II. WAS THE UNGUARDED PROPELLER AS MANUFACTURED BY THE DEFENDANT AN OPEN AND OBVIOUS DANGER OF WHICH THE PLAINTIFF HAD ACTUAL KNOWLEDGE THEREBY PRECLUDING RECOVERY UNDER BOTH STRICT LIABILITY AND NEGLIGENCE COUNTS AS A MATTER OF LAW?
This issue need not be addressed any further because of the aforementioned explanation under issue 1. An issue involving a possible defect in a product's design is a question for the jury, a province into which we will not intrude.

CONCLUSION
The basis for the trial court's dismissal was that the danger creating the plaintiff's harm was open and obvious and that such a defense precluded the plaintiff from being able to recover in a product liability case as a matter of law in Mississippi. The trial judge's decision was proper when made, for which he is not to be faulted, but, in light of the Court's subsequent and recent decisions in Sperry-New Holland, Bunge and Tate, the granting of summary judgment must be reversed for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
HAWKINS, C.J., dissents with separate written opinion.
SMITH, J., joins in result only.
HAWKINS, Chief Justice, dissenting:
I respectfully dissent. I would affirm.
It may seem hard to believe but there was a time in this country when intelligence and common sense were viewed as positive attributes and people took responsibility for their actions. As the majority demonstrates, in Mississippi those days are long gone.
The controlling case in this products liability matter is Sperry-New Holland v. Prestage, 617 So.2d 248 (Miss. 1993). In that case, this Court moved Mississippi products liability law away from a consumer expectations test and towards a risk-utility analysis. Under this new system:
[A] manufacturer is charged with the duty to make its product reasonably safe, regardless of whether the plaintiff is aware of the product's dangerousness. This is not to say that a plaintiff is not responsible for his own actions. In balancing the utility of the product against the risk it creates, an ordinary person's ability to avoid the danger by exercising care is also weighed.

Id. at 256 (emphasis added).
Sperry-New Holland continues, "In `risk utility,' the openness and obviousness of a product's design is simply a factor to consider in determining whether a product is unreasonably dangerous." Id. at 256 n. 4. The openness and obviousness of a product's design is still quite relevant. Furthermore, Sperry-New Holland leaves open the possibility that the danger presented by a product is so open and obvious as to prevent a plaintiff's recovery. If this were not so anyone, as in this case, who filed a products liability lawsuit would be guaranteed access to the jury, no matter how outlandish their claim might be. The result would be a series of lengthy, expensive, and ultimately needless trials clogging the courts of Mississippi.
Was the danger presented by the propeller in this case so open and obvious as to prevent Seymour from recovering? A review of a deposition of Seymour taken on February 2, 1991, proves to be quite useful in answering this question:
Q. How close to the motor was the ladder?
A. About like this. (Indicates)
Q. About  what about say that is, about two feet you have indicated, two and one-half feet?
A. I guess that's right.
Q. You are aware, are you not, that there was no guard of any type on the propeller?
A. I certainly am.

*897 Q. You saw the boat and the motor out of the water on prior occasions, did you not?
A. Yes, I did.
Q. And you were aware at all times that there was no type of guard on the prop.
A. Right.
Q. Do you know how far under the water the propeller was when the boat was in the water? Do you understand the question?
A. No, I don't.
Q. Okay. You know how a boat is propelled by a propeller when it's sitting in the water?
A. Right.
Q. And you are aware, of course, that the propeller is turning?
A. Right.
Q. My question is, do you know how far from the top of the water when the boat is sitting in the water to the bottom of the propeller?
A. I would say maybe like this, whatever that is. (Indicates) I'm not very good with measuring.
Q. Again, you are indicating with your hands roughly two feet, two and one-half feet?
A. I would guess that's about right.
....
Q. You were aware that if you got a body part in the propeller when it was turning that you would be hurt, weren't you?
A. Certainly.
Q. And you knew that when you were out playing on the boat that day, didn't you?
A. Certainly.
(C.P. 294-296)
Seymour admits that she knew that if she put a body part in the propeller she would be hurt. Not only was the dangerousness of the propeller open and obvious, the plaintiff had actual knowledge that it was dangerous. If this does not represent a clear case for summary judgment, what does?
The mind boggles. A piece of food falls onto a hot stove and a housewife tries to lick it off. Presto! You've got a cause of action. Junior needs a haircut? Why not use the lawn-mower? Whoops! Call a lawyer, we're suing Snapper. Clogged toilet? Where's the dynamite? Ka-boom! I'm sure DuPont would be happy to remodel your bathroom. Everyone to the courthouse, the majority has opened the door.
The majority attempts to bolster their position by citing Tharp v. Bunge Corp., 641 So.2d 20 (Miss. 1994), and Tate v. Southern Jitney Jungle Company, 650 So.2d 1347 (Miss. 1995). These cases are premises liability cases, however, and this is a products liability case. The majority does not demonstrate how these two legal doctrines are related much less interchangeable. They simply adopt the rule for the former and apply it to the latter without any explanation. Merely claiming that a case is relevant does not make it so.
Human nature being what it is, for whatever reason, or lack of reason, people sometimes do extraordinarily careless things. They forget to look both ways before crossing the street, forget to wear a seat belt, or forget to be careful when getting into a boat. In the past, people tried to avoid such lapses of judgment because they carried serious consequences. Not anymore. Thanks to the majority, we now know that no matter how stupid you've been, you can always find someone else to blame. What the majority decrees was never the law until this decision, and it never should be the law.[1]
SMITH, J., joins in result only.
NOTES
[1] Daniel Ingold is not involved in this appeal.
[2] Since the events of this case took place, the legislature has enacted § 11-1-63 Miss. Code Ann. (1994 Supp.). The defense of open and obvious was reenacted but is only applicable to product liability cases based upon theories for inadequate warnings or instructions where it is inherently applicable.
[1] Since the events of this case took place, the legislature has enacted § 11-1-63 Miss. Code Ann. (1994 Supp.) This statute overturns much of the ill-founded law that the majority attempts to enforce. Sadly, it was passed too late to apply to the case at bar.