# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CT-01828-SCT

*TIMOTHY VIVIANS*

*v.*

*BAPTIST HEALTHPLEX, BECKY VRIELAND*
*AND HELEN WILSON*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/20/2014 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | HOWARD BROWN |
| | WADE G. MANOR |
| | LEAH LEFORD |
| COURT FROM WHICH APPEALED: | CIRCUIT COURT OF THE FIRST JUDICIAL |
| | DISTRICT OF HINDS COUNTY |
| ATTORNEYS FOR APPELLANT: | HOWARD BROWN |
| | MERRIDA COXWELL |
| ATTORNEYS FOR APPELLEES: | MALLORY MILLER STREET |
| | WADE G. MANOR |
| | JAMES LEROY BANKS, IV |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 06/29/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     A patron of the Baptist Healthplex in Clinton, Mississippi, slipped, fell, and sustained

injuries when stepping into the Healthplex therapy pool. He sued, alleging, *inter alia*, that

the Healthplex had failed to maintain its premises in a reasonably safe condition. The Circuit

Court of the First Judicial District of Hinds County granted summary judgment to Baptist,[1] and the Mississippi Court of Appeals affirmed. Finding that genuine issues of material fact exist, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶2.    Timothy Vivians, a member of the Baptist Healthplex in Clinton, Mississippi, entered the Healthplex pool area on February 12, 2008. As he stepped off the first step and onto the second step of the therapy pool, he slipped and fell backward onto the concrete stairs. Vivians was holding onto the railing and had his walking cane in hand at the time of his fall. He was transported by ambulance to the VA Medical Center in Jackson, Mississippi.

¶3.    Vivians sued the Healthplex along with Becky Vrieland, the Healthplex's Aquatics Director; Helen Wilson, a Healthplex employee; ABC Companies; and John Does 1-10.

¶4.    Drs. Maurice McShan and Edward Hobgood, who were among Vivians's treating physicians, were designated by Vivians as expert witnesses. Dr. McShan, an internist, was designated by Vivians to testify as an expert that Vivians was treated for shoulder pain after the accident on several occasions and that the fall was the sole proximate cause of the injuries suffered. Vivians designated Dr. Hobgood, an orthopaedic surgeon, to testify as an expert that Vivians's fall was the sole proximate cause of a surgical rotator cuff tear to his right shoulder and that the tear necessitated a rotator cuff repair.

¶5.    Baptist moved for summary judgment, arguing that Vivians had failed to present evidence of the existence of a dangerous condition. In response, Vivans produced thirteen

[1] We refer to all defendants collectively as "Baptist."

2

incident reports detailing other slip and fall occurrences in the Healthplex pool area from 2005 to 2010. The incident reports indicated that, of those thirteen occurrences, six involved the steps into the therapy pool. Vivians also produced the deposition of William D. Carpenter, then-executive director of the Healthplex, taken pursuant to Mississippi Rule of Civil Procedure 30(b)(6). Carpenter indicated in his deposition that, because of the incidents, the handrails were wrapped with a yellow abrasive wrapping containing the word "Caution" and the therapy pool and steps were replastered, but he did not know when those safety measures had been implemented.

¶6.     The circuit court granted summary judgment in favor of Baptist, ruling that, while Vivans had offered "testimony of one prior fall at the therapy pool steps, this Court does not find that one prior fall is sufficient to establish a dangerous condition." The Court of Appeals affirmed, holding that the circumstances surrounding Vivians's fall were not substantially similar to the circumstances surrounding the slip and fall incidents prior to and subsequent to Vivians's fall. *Vivians v. Baptist Healthplex*, 200 So. 3d 485, 488-89 (Miss. Ct. App. 2016).

¶7.     We granted Vivians's petition for writ of *certiorari* to consider the existence of genuine issues of material fact regarding whether the steps into the therapy pool at the Healthplex constituted an unreasonably dangerous condition and whether Baptist was negligent for failure to maintain its premises in a reasonably safe condition.

## STANDARD OF REVIEW

¶8.    When reviewing a trial court's grant or denial of a motion for summary judgment, this Court applies a *de novo* standard of review. ***Whitaker v. Limeco Corp.***, 32 So. 3d 429, 433-34 (Miss. 2010).

> The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied.

***Leslie v. City of Biloxi***, 758 So. 2d 430, 431-32 (Miss. 2000) (citations omitted).

## ANALYSIS

¶9.    The parties stipulated that Vivians was an invitee. We have held that a "landowner owes an invitee the 'duty to keep the premises reasonably safe and when not reasonably safe to warn only where there is hidden danger or peril that is not in plain and open view.'" ***Mayfield v. The Hairbender***, 903 So. 2d 733, 737-38 (Miss. 2005) (quoting ***Corley v. Evans***, 835 So. 2d 30, 37 (Miss. 2003)).

¶10.    "Under certain conditions, reports of . . . subsequent accidents at a certain location may be admissible into evidence." We have held that "[a]s to the admissibility of acts subsequent to the accident, discretion rests largely with the trial court in determining if the evidence offered meets the prerequisite of substantial similarity of conditions." ***Hartford Ins. Grp. v. Massey***, 216 So. 2d 415, 418 (Miss. 1968). Vivians submitted five incident reports detailing slip and fall occurrences on the Healthplex therapy pool steps. Vivians argues in his petition for writ of *certioriari* that the five subsequent incidents create a genuine issue of

4

material fact with regard to the existence of a dangerous condition. The facts of those incidents are reproduced, *verbatim*, below:

- March 9, 2008: Patron "entering the water and slipped on the steps. He was holding rail with both hands, but still slipped."

- May 12, 2008: Patron "slipped on the stairs, but caught himself on the hand rail . . . ."

- October 27, 2008: Patron "stated that steps going into the therapy pool are very slick. [Patron] was holding onto rail and slipped on step and hit back and head."

- June 19, 2009: Patron "was getting into the warm therapy pool . . . . She slipped and fell on the steps as she was going down the steps into the pool."

- December 20, 2010: Patron "was coming out of the pool after 8 AM . . . class. She was holding onto another woman when exiting on the steps and slipped down on the top of the steps when she turned loose of woman."

¶11. The Court of Appeals determined that, "[a]lthough the evidence demonstrates that five other Baptist Healthplex members slipped on the therapy pool's steps subsequent to Vivians's accident, there is insufficient evidence that the accidents occurred under or were caused by 'substantially similar circumstances.'" ***Vivans***, 200 So. 3d at 488. But the five subsequent slip and fall occurrences took place on the steps leading into the Healthplex therapy pool. Two of the incidents, more specifically, involved patrons like Vivians who, despite holding onto the rail, still slipped. Three of the incidents resulted in minor injuries. One patron "hit his back and head" when he slipped and fell. Another patron's fall resulted in a hurt ankle with "a few cuts on it." A third patron's fall caused "bleeding on her right knee and left shin."

5

¶12. We find that Vivians adduced ample evidence that his slip and fall on the Healthplex therapy pool steps was substantially similar to the subsequent slip and fall occurrences, and that a genuine issue of material fact exists with regard to the existence of a dangerous condition.

¶13. We next consider whether a genuine issue of material fact exists with regard to whether Baptist breached its duty to Vivians to maintain its premises in a reasonably safe condition. The *Mayfield* Court found that the "two duties—(1) to keep the premises reasonably safe, and (2) to warn of hidden dangers—are separate," that "[t]he breach of either duty supports a claim of negligence," and that "[e]ach must be separately analyzed." *Mayfield*, 903 So. 2d at 738.

¶14. In its brief in the Court of Appeals, Baptist argued that:

> It is common knowledge that steps leading into a pool will be covered in water and will be slicker than a dry flight of steps. Such a "danger" should have been obvious to Vivians in the exercise of ordinary care. In the absence of any evidence from Vivians that the step in question was rendered unusually slippery due to some defect, Vivians cannot prove, as a matter of law, that the step presented the sort of non-obvious "danger" of which BHP had a duty to warn. Accordingly, the trial court properly granted summary judgment with respect to Vivians's failure to warn claims against BHP, and its decision should be affirmed.

This argument is maintained in Baptist's response to Vivians's petition for writ of *certiorari*: "Vivians has failed to demonstrate the presence of any non-obvious dangers on the therapy pool steps about which [Baptist] had a duty to warn Vivians."

¶15. In *Mayfield*, Anita Mayfield, who was making a delivery to The Hairbender salon, "tripped on pavement she described as 'broken, unlevel pavement' which was 'pushed up,

6

probably jutted up two inches over the bottom step.'" *Mayfield*, 903 So. 2d at 734. She sued, alleging that The Hairbender had been negligent both in failing to warn her of the pavement's condition and in failing to repair it. *Id.* Summary judgment was granted to The Hairbender because the "dangerous condition was open and obvious." *Id.* at 735.

¶16.    This Court agreed that the dangerous condition was open and obvious and held that summary judgment was proper as to Mayfield on her failure to warn claim because "evidence established not only that the hazard was open and obvious, but also that Mayfield actually knew of the danger." *Id.* at 736. As to the claim for failure to maintain the premises claim, this Court reversed and remanded the grant of summary judgment. *Id.*

¶17.    We noted first that this Court had "abolished the open and obvious theory as an absolute defense in premises liability cases." *Id.* at 737 (citing *Tharp v. Bunge Corp.*, 641 So. 2d 20, 25 (Miss. 1994)). In *Tharp*, this Court had reasoned that:

> This Court should discourage unreasonably dangerous conditions rather than fostering them in their obvious forms. It is anomalous to find that a defendant has a duty to provide reasonably safe premises and at the same time deny a plaintiff recovery from a breach of that same duty. The party in the best position to eliminate a dangerous condition should be burdened with that responsibility. If a dangerous condition is obvious to the plaintiff, then surely it is obvious to the defendant as well. The defendant, accordingly, should alleviate the danger.

*Tharp*, 641 So. 2d at 25. In *Mayfield*, this Court applied *Tharp*: "*Tharp*'s authority extends to cases (including the case before us today) in which a plaintiff alleges the defendant was negligent in creating or failing to repair a dangerous condition, and the defendant alleges the dangerous condition was open and obvious." *Mayfield*, 903 So. 2d at 737.

7

¶18.    The *Mayfield* Court held that, while no hidden dangers existed and The Hairbender had no duty to warn, "[t]o the extent Mayfield's case is based upon an allegation that The Hairbender failed to maintain its premises in a reasonably safe condition by its negligent failure to repair the raised asphalt, the fact that the hazard was 'open and obvious' does not serve as a complete bar to recovery." *Id.* at 739. The Court continued that landowners cannot avoid liability for failure to repair a dangerous condition merely by pointing out that the dangerous condition was open and obvious: "Following this logic, brown motor oil spilled on a store's white floor would be an open and obvious danger. Therefore, the store could have no liability for failing to clean up the motor oil since its presence on the white floor would be 'open and obvious.'" *Id.* at 738.

¶19.    The Court found that, because the question of whether a landowner was negligent for failure to correct an allegedly dangerous condition is one for the jury to decide, a genuine issue of material fact existed "as to whether The Hairbender negligently failed to maintain its premises in a reasonably safe condition." *Id.* at 739. "In the event Mayfield convinces the jury that the raised asphalt constituted a dangerous condition which The Hairbender failed to repair, the jury may find The Hairbender liable." *Id.* The Court observed, however, that the jury should, as in any case of comparative negligence, compare The Hairbender's negligence to any negligence attributable to Mayfield and reduce her award accordingly. *Id.*

¶20.    Here, Vivians alleged in his complaint that "[t]he Defendants were negligent, and/or failed to exercise reasonable care in maintaining its premises in a safe manner." Baptist answered: "The Plaintiffs' damages and/or injuries, if any exist, are the proximate result of

8

the negligence of the Plaintiff and not a result of any acts or omissions of the Defendant." Baptist is correct that common knowledge dictates that submerged pool steps are more slippery than dry steps and that caution is warranted on the part of patrons. But Baptist owed Vivians "[t]he duty to maintain its premises in a *reasonably* safe condition." ***Mayfield***, 903 So. 2d at 739. And, as noted above, the slip and fall at issue in this case was one of many similar slip and fall occurrences on the steps of the Healthplex therapy pool. As in ***Mayfield***, not only does a genuine issue of material fact exist with regard to whether the steps leading into the therapy pool constituted an unreasonably dangerous condition, but a genuine issue of material fact also exists with regard to whether Baptist negligently failed to repair the steps leading into the therapy pool. *See **id.***

**CONCLUSION**

¶21.    Viewing the facts in the light most favorable to Vivians, we find that genuine issues of material fact exist with regard to whether the therapy pool steps at the Healthplex constituted an unreasonably dangerous condition and Baptist was negligent in failing to maintain its premises in a reasonably safe condition. Accordingly, we reverse the judgment of the Mississippi Court of Appeals and the judgment of the Circuit Court of the First Judicial District of Hinds County. We remand this case to the Circuit Court of the First

9

Judicial District of Hinds County for further proceedings consistent with this decision.

¶22. **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KING, BEAM AND CHAMBERLIN, JJ., CONCUR. DICKINSON, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY KING AND BEAM, JJ. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MAXWELL, J. MAXWELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, J.**

**DICKINSON, PRESIDING JUSTICE, SPECIALLY CONCURRING:**

¶23. I join Justice Kitchens's well-reasoned majority, and I write separately only to amplify a point of particular concern to me. The existence of a jury question in this case derives from the frequency of the falls on the therapy pool steps. Negligence is "[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation."[2] The duty to maintain a premises in a reasonably safe condition rests on what a reasonably prudent property owner would do.[3] Were there thousands of similar incidents on the steps, it would be obvious that a reasonably prudent property owner would take corrective action. Were there none, no reasonable jury could conclude the steps were unreasonably dangerous. In my view, the number of prior incidents in this case falls squarely within the zone that must be left to a jury.

**KING AND BEAM, JJ., JOIN THIS OPINION**.

---

[2] *Negligence*, Black's Law Dictionary (abr. 9th ed. 2010).

[3] *See*, *e.g.*, ***Moore v. Winn-Dixie Stores, Inc.***, 252 Miss. 693, 173 So. 2d 603, 704–5 (1965).

10

**COLEMAN, JUSTICE, DISSENTING:**

¶24.   Unlike the majority opinion above, I am unable to locate a genuine issue of material fact that warrants our reversal of summary judgment granted in favor of Baptist. The only evidence Vivians offers in support of his negligence claim are the prior and subsequent accident reports involving slip-and-fall incidents on the therapy pool steps, but, even taking the evidence in a light most favorable to Vivians, he has proven the existence of nothing more than steps and a pool.  Accordingly and with respect, I would affirm.

¶25.   Due to Vivians's status as an invitee, Baptist owed him a duty to keep its premises reasonably safe, and when not reasonably safe, a duty to warn only where there is hidden danger that is not in plain view. *Mayfield v. The Hairbender*, 903 So. 2d 733, 737-38 (¶ 20) (Miss. 2005).  Recovery for a slip and fall under premises liability requires more than proof of falling. *Sears, Roebuck & Co. v. Tisdale*, 185 So. 2d 916, 917 (Miss. 1966).  In *Munford, Inc. v. Fleming*, 597 So. 2d 1282, 1284 (Miss. 1992), the Court explained:

> [F]or a plaintiff to recover in a slip-and-fall case, he must show the proprietor had actual knowledge of a dangerous condition, *or* the dangerous condition existed for a sufficient amount of time to establish constructive knowledge, in that the proprietor should have known of the condition, *or* the dangerous condition was created through a negligent act of a store's proprietor or his employees.

Thus, in order to recover, Vivians must show that a dangerous condition existed and then, that Baptist had actual or constructive knowledge of the dangerous condition or that Baptist, through its employees, created the dangerous condition.  I submit that Vivians, even with the accident reports, has failed to show that a dangerous condition existed at all because I am unwilling to find that pool steps are inherently a dangerous condition.

11

¶26.    In *Tate v. Southern Jitney Jungle Co.*, 650 So. 2d 1347, 1351 (Miss. 1995), the Court reversed a trial court's judgment granting a directed verdict in favor of Jitney Jungle. Tate injured her knee on a piece of metal on the deli counter, and the trial court granted a directed verdict in Jitney Jungle's favor because the deli counter was open and obvious.[4] The Court explained that its decision to reverse was because the deli counter's defect was not a "danger[] which [is] usual and which customers normally expect to encounter on business premises, such as thresholds, curbs, and *steps*." *Id.* (emphasis added). Again, in *Fulton v. Robinson Industries*, 664 So. 2d 170, 174-5 (Miss. 1995) (citing *Tate*, 650 So. 2d at 1351), the Court stated: "This Court has recently reamplified this line of thinking by acknowledging that there is a difference between dangers which are "usual and which customers normally expect to encounter on the business premises [and] claimed physical defect[s] on the defendant's premises . . . which may be found to be unusual and unreasonably dangerous." The Fifth Circuit applied *Tate* in its 2009 opinion *Wood v. RIH Acquisitions MS II, LLC*, 556 F. 3d, 274, 282 (5th Cir. 2009), in which it held that "the *Tate* concept of usual and normally expected hazards has for over a decade been applied on summary judgments in federal courts when considering Mississippi premises liability[;] we do not suggest a change to that practice. At least those hazards that are similar to undamaged thresholds, curbs, and steps, which are common architectural features for buildings and parking lots . . . ." As discussed above, all Vivians has done is prove that there are steps leading into Baptist's

---

[4] The opinion noted the change in our jurisprudence of "open and obvious" not being an absolutely defense to liability based on *Tharpe v. Bunge Corp.,* 641 So. 2d 20 (Miss. 1994). *Tate*, 650 So. 2d at 1351.

12

therapy pool. He has not claimed that the steps were unreasonably slippery; that the steps were cracked, crumbling, or in any state of disrepair; that the steps were improperly designed or built; that he slipped on an unknown object; or *any* other reason to explain his fall. I find persuasive the following language from a unanimous Mississippi Court of Appeals in

*Huguley v. Imperial Palace of Mississippi, Inc.*, 930 So. 2d 1278 (Miss. Ct. App. 2006):

> Merely proving that an accident occurred on a business premise is not sufficient to prove liability or by itself prove that a dangerous condition existed at the time of the accident. There must be proof that the business was negligent. Here there is no proof that Imperial Palace was in any way negligent. The testimonies of Mr. Huguley and Mrs. Dale cannot and do not show what caused Mr. Huguley to fall or any negligence on the part of Imperial Palace in the maintenance of construction of the parking garage.

*Id.* at 1281 (¶ 14) (citations omitted). Simply, he slipped on what appear to be, based on the record before us, normal pool steps, and I cannot fathom where the Court would find that steps, by themselves, are a dangerous condition.

¶27. Presiding Justice Dickinson, in his specially concurring opinion, offers an extreme hypothetical, positing that if thousands of accidents happened on the same set of steps, surely a premises owner would take corrective action. Leaving aside that, like Vivians, Presiding Justice Dickinson offers no description of the dangerous condition that underlies his thousands of accidents (or what his hypothetical premises-owner can do to correct it);[5] in the end his hypothetical illustrates the deleterious effect of today's result. Absent evidence identifying the dangerous condition at issue, how many accidents is enough? Presiding

---

[5]The stage for Presiding Justice Dickinson's hypothetical could as well be a well-lit, wide, perfectly level hallway with no dangerous condition whatsoever as the pool involved in the case *sub judice*.

13

Justice Dickinson suggests thousands, but why not one hundred or, for that matter two? Pursuant to today's majority, one who owns a perfectly safe building may well face litigation that goes to a jury for no better reason than two people fell in the same place within a certain period of time – despite the complete absence of any proof of an actual dangerous condition. The hapless premises owner would face attorneys' fees, possible settlement or trial expenses, and the headache of litigation, despite there being nothing wrong with the premises at all. Today, the majority effectively changes Mississippi law such that, instead of plaintiffs being required to provide evidence of a dangerous condition to make a *prima facie* case sounding in premises liability, they need prove only (a yet-to-be determined number of) other accidents. Such has never been Mississippi's premises liability law, and we should refrain from making it so today.

¶28. Therefore, I would affirm the trial court's grant of summary judgment in favor of Baptist because there is no genuine issue of material fact that a dangerous condition existed at all.

**MAXWELL, J., JOINS THIS OPINION.**

**MAXWELL, JUSTICE, DISSENTING:**

¶29. I agree with the bulk of Justice Coleman's well-stated dissent. Vivians has presented no proof the therapy-pool steps were a dangerous condition. I write separately to voice my grave concern that the majority's opinion expands the scope of premises liability and imposes an almost strict-liability standard on property owners.

14

¶30. The majority finds the potential existence of a dangerous condition enough to establish a triable premises-liability claim—even though Vivians presented no proof Baptist had any knowledge, actual or constructive, that the therapy-pool steps were unreasonably dangerous and in need of repair. Until Vivians fell, there had been only one incident on the therapy-pool steps. And that incident was three years earlier. In other words, for the three years leading up to Vivians's fall, there had been *zero* incidents on the therapy-pool steps. And there was no reason for Baptist to suspect the steps posed an unreasonable danger—i.e., one beyond the unavoidable danger associated with climbing on wet pool steps. After Vivians fell, there were other incidents. But these after-the-fact falls are not proof Baptist should have known or did know the therapy-pool steps posed an unreasonable danger on February 8, 2008, the day Vivians fell.

¶31. Until today's opinion, the mere potential presence of an unreasonably dangerous condition was not enough to establish a premises-liability claim. The plaintiff also had to present a theory and proof that the property owner was *negligent*—either because it created the dangerous condition, or it knew or should have known about the condition and failed to repair it or warn about it. *E.g, **Anderson v. B. H. Acquisition, Inc.***, 771 So. 2d 914, 918 (Miss. 2000) (citing ***Downs v. Choo***, 656 So. 2d 84, 86 (Miss. 1995); ***Munford, Inc. v. Fleming***, 597 So. 2d 1282, 1284 (Miss. 1992)). Here, Vivians has presented no proof of either. So the claim we are remanding back to the circuit court is more akin to a strict-liability claim than a slip-and-fall claim as previously defined by this Court.

15

¶32. Holding property owners to this new standard where they can be potentially liable for a slip and fall on their premises—even when there is no proof they acted negligently—imposes an unnecessary and unfair burden on them. For this reason, I strongly dissent. I would affirm the judgments of the trial court and Court of Appeals because Vivians failed to present any proof Baptist committed a negligent act that led to his injuries.

**COLEMAN, J., JOINS THIS OPINION.**