775 So.2d 1276 (2000)
A & F PROPERTIES, LLC, Appellant,
v.
LAKE CAROLINE, INC., Appellee.
No. 1998-CA-01755-COA.
Court of Appeals of Mississippi.
October 24, 2000.
*1278 William Larry Latham, Jackson, Attorney for Appellant.
Steven H. Smith, Jackson, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., IRVING, AND PAYNE, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. This appeal concerns a contract dispute between the developer of a residential subdivision and the party who was to construct and operate a golf course on part of the property. Judgment was entered after a jury verdict that found a breach of contract by the subdivision developer but awarded no damages. A different contract provision was found to have been breached by the golf course owner. Attorneys fees in identical amounts were awarded to the parties. Neither party was satisfied and both appeal. We hold that compensatory damages should have been awarded for the breach by the subdivision developer. We find the only credible evidence of damages was the cost to widen the road to the proper width, and we enter judgment for that amount. However, the evidence to support the award of attorneys fees was lacking. We reverse and render both awards of attorneys fees.

STATEMENT OF THE FACTS
¶ 2. The relevant contract concerns the construction of a golf course as part of the Lake Caroline residential subdivision in Madison County. Lake Caroline, Inc. is the developer of the lake and subdivision. The golf course developers are Norman Rush Agent and Craig W. Foshee, who formed A & F Properties, LLC. A & F contracted to design, build and maintain a golf course upon 154 acres that Lake Caroline would convey from the development to A & F. As additional consideration, A & F would later be conveyed ten subdivision lots according to a selection formula set out in the contract. In return, A & F agreed not only to design, construct and maintain the golf course, but also to execute a "Maintenance Deed of Trust" in favor of Lake Caroline that would serve as a permanent second lien on the golf course property.
¶ 3. Subsequently, A & F filed suit in the Circuit Court of Madison County alleging that Lake Caroline failed in timely fashion to construct a road leading off the principal interior subdivision road and into the golf course. A & F later discovered that the width of the road was not constructed in a manner consistent with its interpretation of the contract. Disputes about the lot selection and the "Maintenance Deed of Trust" also were joined in the suit.
¶ 4. At the end of a jury trial, the court granted a directed verdict in favor of Lake Caroline on the issues of liability and punitive damages regarding the lot selection process. As to the contract claim regarding the golf course road, the jury found Lake Caroline liable for breach of contract, awarded attorneys fees to A & F but did not award compensatory damages. A directed verdict was also granted in favor of Lake Caroline as to the "Maintenance Deed of Trust." On this deed of trust claim, the jury awarded an identical amount of attorneys fees to Lake Caroline. Both parties appeal.

DISCUSSION

1. Breach of provision regarding road and award of damages.
¶ 5. On the breach of contract claim concerning the construction of the road, the jury found Lake Caroline liable for the breach of contract but did not award any compensatory damages. The contract provision *1279 in question deals specifically with the construction of a 50 foot wide road that serves as an entrance to the golf course:
Seller shall construct a fifty (50) foot wide road for a public and private access road to the golf clubhouse as said road is designated on the plats prepared by the design companies and the engineers, according to the standards acceptable to Madison County, Mississippi and shall either dedicate said clubhouse road to public use or provide Buyer and its golf club members, employees, invitees, stockholders and other parties necessary for the successful operation of a golf club a non-exclusive perpetual easement over said roadway. Seller agrees to construct and complete the clubhouse road in conjunction with and in any event no later than the completion of construction of the golf course clubhouse.
¶ 6. There was essentially unrebutted evidence that applicable county ordinances require that a road's right-of-way be wider than the paved surface. The issue is whether the contract required 50 feet of pavement, which would have required a still wider right-of-way, or a 50 foot wide right-of-way and a lesser amount of pavement. It is initially for the trial judge to determine as a matter of law whether the contract provision is ambiguous; if it is, then the jury determines the proper meaning. Ellis v. Powe, 645 So.2d 947, 952-53 (Miss.1994). The court ruled that the contract did not require more than a 50 foot right-of-way. What the court found to be ambiguous was the intended width of the pavement. We understand the trial court as concluding as a matter of law that the contract only required 50 feet of property to be set aside for road purposes but that the parties may not have understood that more than 50 feet of right-of-way was needed for 50 feet of pavement.
¶ 7. We conclude that the ambiguity was broader than this. When the contract provided that Lake Caroline "shall construct a fifty (50) foot wide road," it managed to avoid using either substitute word that would have clearly answered the question that we now facewas there to be 50 feet of "pavement" or fifty feet of "right-of-way." The trial court's conclusion that no more than 50 feet were to be dedicated to road use is logical enough but not compelled by this language. It is equally plausible that the parties meant that the visible "road" would be 50 feet wide, i.e., the pavement itself, regardless of how much more property would have to be dedicated for road purposes. The choices for the jury in interpreting the phrase were these: 1) a 50 foot right-of-way with the width of the paved road to be determined by Madison County standards, or 2) a 50 foot wide paved road with the width of the right-of-way to be determined by Madison County standards.
¶ 8. Despite the trial court's statements, no error occurred if the jurors were properly instructed on these matters. If the instructions read as a whole required the jury to make the determination as to the entire ambiguity, then this question was in fact resolved by the jury. A plaintiff has the burden to prove by a preponderance of the evidence the existence of a binding contract, that the defendant breached it, and that damages proximately resulted from the breach. Warwick v. Matheney, 603 So.2d 330, 336 (Miss.1992). Part of the jury's determination here is just what the contract required. Two instructions are relevant:
[Instruction D-8] The Court instructs the Jury, that if you find from a preponderance of the evidence that paragraph 13(a) of the Contract entered into by and between Plaintiff and Defendant, did not require the Defendant to construct an access road containing fifty (50') feet of pavement, then you shall find for the Defendant, Lake Caroline, Inc., and assess no damages.
[Instruction # 7] If you find from a preponderance of the evidence that the defendant breached the contract by failing *1280 to construct a fifty foot (50') wide road for a public or private access road to the golf clubhouse as stated in the September 27, 1995, contract between the parties and that the plaintiff has been damaged thereby, then the plaintiff is entitled to a verdict in as amount which will reasonably compensate the plaintiff for its loss sustained. Such damages are called compensatory or actual damages and are awarded for the purpose of making the plaintiff whole again insofar as a money verdict can accomplish that purpose; to put A & F Properties, LLC in as good a position as it would have been had Lake Caroline, Inc. not failed to fulfill its part of the contract.
If you further find from a preponderance of the evidence in this case that to insure the performance of the terms and conditions of the September 27, 1995 Contract, it was necessary for A & F Properties, LLC to employ an attorney, then if you find from a preponderance of the evidence that Lake Caroline, Inc. was the defaulting party then you may include reasonable attorney's fees and court cost in any award of actual damages awarded to A & F Properties, LLC.
¶ 9. Instruction D-8 required the jury to decide whether the contract required 50 feet of pavement. If it did not, then the jury was to find for the defendant Lake Caroline. When Instruction # 7 is read in light of D-8, the jury would have awarded damages to A & F only if 50 feet of pavement was required and damages occurred as a result of the laying of narrower pavement. When read together, these instructed the jury on the entire ambiguity of the contract language and the requirements of finding injury before awarding damages. Lake Caroline acknowledges as much when it argues that giving instruction # 7 was error in light of the court's earlier ruling as to ambiguity. Instead of being error, we find that the instruction corrected the earlier legal error the court made. We defer an analysis of the instructions's language about measuring damages until after a review of the evidence.
¶ 10. Regardless of the instruction, Lake Caroline argues that the evidence will not support a finding of breach of contract. Evidence was admitted from engineers and other specialists that attempted to prove that within the construction and engineering industries a "50 foot wide road" meant a 50 foot wide right-of-way. One of Lake Caroline's witnesses testified that he would have interpreted the phrase as a right-of-way, but he further testified that had he seen the contract he would have asked both parties what they meant by a "50 foot wide road." That would suggest to a jury that the phrase is unclear to at least one person experienced in such matters.
¶ 11. Mr. Agent of the plaintiff A & F Properties testified that he had intended the construction of a 50 foot wide paved road. Mr. Agent admitted that he was not experienced in the real estate business nor was he an engineer. That lack of experience is evidence that he might not know what terms are generally used to express certain obligations, but he did testify as to what he meant. A & F argued that the contract provided that Lake Caroline would construct a 50 foot wide paved road. This road was to be the main entrance leading to the clubhouse. A & F argued that its purpose was to have a grand entrance that would not only be an attractive drive, but would be utilized in dealing with overflow parking during peak times, including at special events.
¶ 12. The jury sifted through this evidence and found Lake Caroline liable for failing to construct a 50 foot wide paved road. Implied in that finding is that the contract required the providing of whatever was necessary for the road, including setting aside additional land as a dedicated right-of-way. There was sufficient evidence to support this finding.
*1281 ¶ 13. Although the jury found Lake Caroline liable, it did not award any compensatory damages. A non-breaching party is entitled to be placed in the position that party would have attained absent the breach. Leard v. Breland, 514 So.2d 778, 782 (Miss.1987). Even with this rule, it is necessary for damages to be proved by a preponderance of the evidence. Warwick, 603 So.2d at 336.
¶ 14. Two means exist for calculating damages in construction disputes such as this.
Where a building is completed, substantially according to plans and specifications, the measure of damages may be determined by: (1) the cost rule which is the cost of repairing the defects to make the building or structure conform to the specifications where such may be done at a reasonable expense if unreasonable economic waste is not involved, or (2) the diminished value rule which is the difference in the value of the property with the defective work and what the value would have been if there had been strict compliance with the contract.
Gerodetti v. Broadacres, Inc., 363 So.2d 265, 267-68 (Miss.1978). The cost rule applied here would award damages sufficient to widen the road to 50 feet of pavement. If substantial compliance with the contract has occurred and cost rule damages for complete compliance would cause economic waste, the diminished value rule is used to measure damages. Id. at 268. This measures the difference in the value of the defective construction and that of the construction specified under the contract. Id. Here, A & F argues that the repair cost rule should apply and that they proved by undisputed evidence that the cost to make this pavement 50 feet wide is $63,249.
¶ 15. Was it proper in these circumstances for the jury to award no damages? The jury instruction on damages merely said that if damage occurred, an amount sufficient to make the plaintiff "whole" should be awarded, and added that A & F should be placed "in as good a position as it would have been had Lake Caroline" complied with the contract. There was no further detail on the method of calculating damages if that became necessary. A jury should be given a reasonable guide to determine damages. Gerodetti, 363 So.2d at 266. Any conference on the instructions that may have been held was not transcribed and thus we do not know whether an objection to the instruction was made below. Determinative for us, though, is that no one complains on appeal. Thus we analyze whether under this specific instruction the jurors erred in awarding no damages. We do not concern ourselves whether the cost rule was proven or economic waste would have occurred or whether substantial compliance with the contract was shown. We decide whether awarding no damages was reversible error on the evidence submitted in light of the need to make A & F whole.
¶ 16. Once the jury found that a 50 foot wide paved surface was to be laid, it was obvious that A & F had not received the benefit of the agreement. Certainly the jury may have wondered whether such a grand entrance had much significance or was instead only minimally related to the quality of the golf course development. In the simple terms of the instruction, though, the only means for the jury to have awarded no damages was for it to find that A & F was in as good a position without the wider road as it would have been with it. Remaining at the level of simplicity, we disagree that A & F was "whole" when they have been found by the jury to have been entitled to a 50 foot wide stretch of pavement and got only 28 feet of pavement. Even if this instruction imported some notion of the ultimate worth of the appropriate road, we find that the significantly different width road to which A & F was entitled must have had some value greater than what was built. Since jurors were never told about "substantial compliance," they would not have had to concern themselves with that. From any *1282 perspective, to award zero damages was reversible error.
¶ 17. By reversing, we are faced with the choice of entering judgment for the unimpeached cost of bringing the road up to the appropriate standard or of remanding for additional proceedings. We have found that any testimony that A & F was not damaged at all to be incredible, and therefore the only competent evidence to which to apply the instruction was testimony by A & F's witness as to the cost of now building the proper width road. That testimony had to be accepted as accurate:
Uncontradicted or undisputed evidence should ordinarily be taken as true by the triers of the facts. More precisely, evidence which is not contradicted by positive testimony or circumstances, and is not inherently improbable, incredible, or unreasonable, cannot be arbitrarily or capriciously, discredited, disregarded, or rejected, even though the witness is a party or interested; and unless shown to be untrustworthy, is to be taken as conclusive, and binding on the triers of fact.
Lucedale Veneer Co. v. Rogers, 211 Miss. 613, 635, 53 So.2d 69, 75 (1951). Lake Caroline did not try to discredit the accuracy of the $63,249 figure in its examination of the witness who gave it. Thus if the issue were solely how much to award so that A & F would receive the proper width road, $63,249 would have to be awarded. In that event, this evidence of the cost of now building the desired width road, evidence that cannot be called improbable, incomplete, or otherwise incredible, was the only basis on which the jury properly could have acted. Denson v. George, 642 So.2d 909, 914 (Miss.1994).
¶ 18. We acknowledge that the legal issue was not so limited. As already discussed, and under the quite general instruction on damages, had jurors been given evidence both that the road of the prescribed width was largely but not entirely vestigial to the benefit of A & F's bargain and that the impact of the narrower road on the value of what A & F received was much less than the cost of compliance, then this other evidence could have been the basis for a damage award. That was not factually permissible in this trial, though. Any musings by jurors about the true worth of that wide of a road would have been speculation only, since nothing credible was given them as evidence.
¶ 19. We have found no error in the jury's decision that the contract required a 50 foot wide paved surface and that the contract was therefore breached. We affirm that determination and reverse and render for $63,249 plus statutory interest from the date of the trial court's judgment.

II. Attorneys Fees
¶ 20. Under the contract, A & F was required to convey a "Maintenance Deed of Trust" to Lake Caroline to serve as a permanent second lien on the golf course property. At trial, the trial judge directed a verdict in Lake Caroline's favor, ordering A & F to execute and record the deed of trust. The jury awarded Lake Caroline attorneys fees on this issue. The jury awarded the identical amount of attorneys fees to A & F on the issue of the construction of the proper width road. A & F challenges the fees as being excessive, while Lake Caroline on cross appeal does the same with the fees it was ordered to pay.
¶ 21. Attorneys fees cannot be awarded absent a relevant contractual provision or statutory authority, or unless punitive damages are granted. Stokes v. Board of Directors of La Cav Imp. Co., 654 So.2d 524, 529 (Miss.1995). This contract allowed attorneys fees in limited situations:
If it becomes necessary to insure the performance of the terms and conditions of this Contract by any party hereto having to employ an attorney, then the party admitting default, or the party adjudicated as the defaulting party by a court of competent jurisdiction, shall pay *1283 reasonable attorneys' fees and the court cost incurred, if any.
¶ 22. This meant that the parties were entitled only to the fees for enforcing the specific contract provisions on which they prevailed. Conversely, the burden of fees was only on a "defaulting party." Therefore, A & F was entitled to fees for the legal work its attorneys performed regarding the road issue. Lake Caroline was entitled to fees concerning the enforcement of the deed of trust provision. Most of the remainder of the fees, such as those for Lake Caroline in presenting its unsuccessful defense of the road widening claim and those for A & F in pursuing the lot selection claim, must be paid by the party that incurred them. The problem is that neither party presented evidence to allow such an allocation. Lake Caroline presented an exhibit containing its attorneys fee statements totaling $60,096.75. A & F's similar exhibit revealed its attorneys' charges of $40,044.50. The jury awarded the identical amount to each party of $40,044.50. Neither bill was itemized in a way to determine what charges were billed on each issue. No testimony was presented to permit a division. We find only one day's entry for $218.75 that by its terms was on a single, identifiable reimbursable aspect of the suit. We leave that as a de minimis exception to the evidence the jury was given.
¶ 23. We therefore reverse the fee awards. Next, just as we faced with the question of damages for the breach of the road provision, we must decide if this is an issue that should be reconsidered at the trial level. We start from the same point as for that previous issue: what was the evidence that the jury could consider? Unfortunately, we find no evidence given to the jury on which they could have entered any award at all. When a party proves liability but fails to present competent evidence on damages, that is a failure of proof and no damages should be awarded.
¶ 24. For example, when the proper measure of damages in a breach of contract case was net profits properly discounted to present value, the Supreme Court reversed judgment for a party whose proof solely was of gross profits; a zero damage judgment was then entered on appeal. Lovett v. E.L. Garner, Inc., 511 So.2d 1346, 1353 (Miss.1987). Even more in point, in Lovett attorneys fees were awarded for $5,000. The evidence to support that consisted of the client's testimony that when the trial was over he likely would owe between $4,000 and $5,000 in attorneys fees. No time sheets nor other evidence indicating the amount of time and charges were presented. This was found to be inadequate as a matter of law and the Supreme Court entered judgment awarding no fees. Id. at 1353-54. There was not a remand for another presentation with proper proof. In our case, there were billing summaries but they did identify the time and charges that were reimbursable.
¶ 25. The rule in operation here is that it is "incumbent upon the party seeking to prove damages to offer into evidence the best evidence available [on] each and every item of damage. If he has records available, they must be produced. While certainty is not required, a party must produce the best that is available to him." Eastland v. Gregory, 530 So.2d 172, 174 (Miss.1988). In addition to other contract damages, the plaintiff in George attempted to prove entitlement to attorneys fees. Though fees were awarded in the trial court, they were reversed on appeal because, among other defects, there was no proof that the fees "were necessitated to represent the wronged party as a result of the breach." Id at 175. Since the proof failed to show that the fees requested were caused by the breach, none could be awarded and judgment for no fees was entered on appeal.
¶ 26. It is true that in the present case both parties made lengthy presentations about fees. But never did they present *1284 competent evidence on which a jury could make an award. As in the gross versus net profits damage issue in Lovett, there was significant documentation but it related to the wrong measure of damages. A new trial with a new opportunity to present evidence on the proper measure of damages is inappropriate. What is needed at the one trial to which a party is entitled is an evidentiary "foundation upon which the trier of fact can form a fair and reasonable assessment of the amount" of damage." Fred's Stores of Mississippi, Inc. v. M & H Drugs, Inc., 725 So.2d 902, 914-15 (Miss.1998), quoting Ham Marine, Inc. v. Dresser Industries, Inc., 72 F.3d 454, 462 (5th Cir.1995). That evidence was not introduced.
¶ 27. A new opportunity at a new trial to present evidence is granted when judicial or jury error requires a reversal of the initial trial and the proper judgment is uncertain. Here the proper judgment based on the evidence that the parties without objection presented and considered by the jury on the instructions that the court without appellate objection granted, was for no attorneys fees.

III. Directed Verdict on claim regarding lot selection
¶ 28. A & F argues that Lake Caroline breached the contract provision regarding the lot selection process and that these actions were in bad faith warranting an award of punitive damages. The lower court directed a verdict for in Lake Caroline on both the lot selection breach of contract and punitive damages claims. A & F argues that Lake Caroline intentionally denied A & F the right to select one lot from Phase I by recording the Phase I plat with only nine lots.
¶ 29. The contract provision containing the lot selection process states this:
The selection process for the lots shall be as follows: (a) the Lake Caroline development around the golf course property shall be divided into eight (8) phases; (b) Seller shall then pick the first ten (10) lots in each phase; (c) Buyer shall then pick the eleventh (11th) lot in each phase; (d) Seller shall then pick the next ten (10) lots in each phase; and (e) Buyer will pick its remaining lots from any phase it desires.
A & F is guaranteed ten lots in the Lake Caroline development. It may choose one lot from each of the eight phases. The ninth and tenth lots are to be chosen from any of the eight phases that contain more than twenty-one lots at the time of completion of the development of all eight phases.
¶ 30. The record shows that Lake Caroline recorded a plat for Phase I which contained only nine lots. However, the testimony was that although a plat for Phase I was filed, the development of Phase I was not fully shown on the plat. Lake Caroline argues that there is nothing in the contract language that requires Lake Caroline to file a complete plat of each phase. Testimony explained that at the time Lake Caroline filed the plat only nine lots were ready for marketing. However, Lake Caroline contends that additional lots would be added to Phase I before that phase was completed. Not only was Phase I only partially platted, there were seven entire phases still to be developed. Those seven phases would contain 200 to 250 lots. Lake Caroline had done nothing that would interfere with A & F receiving the full benefit of its bargain for ten lots.
¶ 31. Punitive damages are awarded in a contract action only if there has been an intentional wrong and the acts were so egregious as to descend to the level of an independent tort. Paracelsus Health Care Corp. v. Willard, 754 So.2d 437, 447 (Miss.1999). In this case, Lake Caroline's actions had not (yet) even breached the contract. Lake Caroline explained why there were only nine lots so far in Phase I. No contrary evidence was admitted and only speculation could support a different view. Any finding that Lake Caroline intentionally denied A & F *1285 any rights to select ten lots from a total of about 250, when only nine had been platted so far, would at best have been premature.
¶ 32. Accordingly, we affirm the directed verdict in favor of Lake Caroline on the breach of contract and punitive damages claims regarding the lot selection process.
¶ 33. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS REVERSED IN PART AND JUDGMENT IS ENTERED HERE FOR $63,249 PLUS POST-JUDGMENT INTEREST; BOTH AWARDS OF ATTORNEYS FEES ARE REVERSED AND RENDERED; IN ALL OTHER RESPECTS THE JUDGMENT IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED EQUALLY TO EACH PARTY.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.