962 So.2d 632 (2007)
INDUSTRIAL AND MECHANICAL CONTRACTORS OF MEMPHIS, INC., Appellant/Cross-Appellee
v.
TIM MOTE PLUMBING, LLC, Appellee/Cross-Appellant.
No. 2005-CA-01414-COA.
Court of Appeals of Mississippi.
January 23, 2007.
Rehearing Denied May 8, 2007.
*634 Christian T. Goeldner, Southaven, attorney for appellant.
Paul R. Scott, Batesville, attorney for appellee.
Before MYERS, P.J., GRIFFIS, and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. This contractual dispute arose from work performed by a subcontractor, Tim Mote Plumbing, LLC ("Mote") pursuant to a contract between the parties. The Chancery Court of DeSoto County held in favor of the contractor, Industrial and Mechanical Contractors of Memphis, Inc. ("IMC"), awarding damages sustained by IMC in remedying Mote's defective work. Satisfied in all other respects with the chancellor's judgment, IMC appeals the chancery court's denial of legal fees, fees to which IMC asserts it is entitled pursuant to the contract. Mote cross-appeals the amount of damages awarded to IMC, contending that the damage amounts awarded to IMC were inconsistent with the chancellor's findings of fact with respect to Mote's breach. Finding merit only in Mote's cross-appeal, we affirm the chancellor's denial of attorney's fees but reverse and remand for a determination of damages attributable solely to Mote's failure to "tie in" a water pipe beneath the parking lot.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. In July of 2002, Barney Brothers of Mississippi, Inc. contracted with IMC, a general contractor, for the construction of a commercial building. Pursuant to this engagement, IMC entered into a subcontract with Mote, as plumbing subcontractor, for the installation of the plumbing system. According to the subcontract between IMC and Mote, Mote was to be paid by three separate draws. IMC paid the first two draws without incident. IMC refused, however, to remit payment on the third and final draw, citing defects in the work performed by Mote.
¶ 3. The instant action began when Barney Brothers, notified by Mote of IMC's refusal to pay the final draw, filed an interpleader complaint in chancery court, naming both companies as defendants to the action.[1] IMC timely filed its answer to the interpleader action. Additionally, IMC filed a cross-complaint against Mote, alleging that Mote breached the contract between the parties and asserting that Mote was liable for: (1) the costs of remedying the defective work, (2) legal fees incurred as a result of Mote's breach, and, (3) a contractual penalty of twenty percent of the costs associated with remedying the defective work.
¶ 4. At trial on the merits of the cross-claim, IMC presented evidence that Mote breached the contract in several respects. First, IMC contended that Mote failed to *635 properly "tie-in" a water pipe, resulting in a leak beneath part of the parking lot. To remedy this defect, a hole was dug in the pavement, and the water pipe was excavated and properly "tied-in" to prevent further leakage. When the pipe was repaired, a pavement patch was applied to the hole in the pavement. According to testimony, Barney Brothers was not satisfied with the difference in appearance between the pavement patch and the remainder of the parking lot. In order to make the parking lot look uniform, IMC hired Driveways, Inc. to resurface and restripe the entire parking lot. Second, evidence was also presented at trial alleging that Mote breached the contract by failing to properly compact the trenches in which Mote laid sewage and water pipes. Because of this alleged breach, IMC incurred additional expenses digging up and properly compacting these pipe trenches. Finally, IMC asserted that Mote breached the contract when Mote employees punched holes in the sheetrock walls inside the building in an effort to locate water cutoff valves, requiring IMC to repair the holes at IMC's expense.
¶ 5. The chancellor held in his opinion that IMC "failed to meet its burden of proof with reference to every aspect of the litigation except for the damage and repairs to the parking lot." Specifically, the chancellor held that testimony elicited at trial indicated that there "was a lot of rain which could have directly affected compaction. There was also not sufficient proof to support that part of the liability (compaction of parking lot) on the part of Mote and the damages." As to the damage to the sheetrock, the court found "that the damages to the sheetrock was caused by IMC's crews sheetrocking before the plumbers were finishing `top in' therefore requiring Mote to punch holes in the sheetrock." The only proof which rose to the level of preponderance of the evidence, according to the court, was the evidence of Mote's failure "to `tie in' a pipe underneath the parking lot, thereby causing a leak." The chancellor awarded IMC damages in the amount of $3,816. Although Mote contests the evidentiary basis for this amount, the chancellor's intention was presumably to compensate IMC only for damages sustained as a result of Mote's failure to "tie in" the water pipe beneath the parking lot.
¶ 6. At the conclusion of the bench trial, IMC filed a post-trial "Motion for Award of Attorney's Fees."[2] IMC claimed that it was entitled to reimbursement for all of its attorney's fees pursuant to a clause in the subcontract which obligated Mote to pay IMC's attorney's fees "[i]f it becomes necessary for [IMC] to employ an attorney to enforce its rights against [Mote]." The chancellor denied this motion without explanation.
¶ 7. IMC appeals only the denial of attorney's fees; Mote maintains that the chancellor did not abuse his discretion in denying IMC's requested legal fees, contending that IMC is entitled to fees only with respect to the one claim upon which it prevailed, and asserting that IMC failed to provide any evidence that would have allowed the chancellor to allocate fees. In its cross-appeal, Mote does not challenge the chancellor's findings of fact with respect to the company's failure to properly "tie in" the pipe underneath the parking lot. Instead, Mote argues that the chancellor erroneously included in his damage computation amounts which, according to trial evidence, included costs to remedy Mote's alleged failure to compact. Mote *636 contends that this constitutes manifest error in light of the chancellor's holding that the evidence was insufficient to establish Mote's liability for failure to compact. Mote challenges the award of a twenty percent contractual penalty only insofar as it was applied to an erroneous damage amount.

STANDARD OF REVIEW
¶ 8. It is well settled that this Court will not reverse a chancellor's findings of fact "unless they are manifestly wrong, not supported by substantial credible evidence, or an erroneous legal standard was applied." Columbia Land Dev., LLC v. Sec'y of State, 868 So.2d 1006, 1011(¶ 14) (Miss. 2004) (citing Vaughn v. Vaughn, 798 So.2d 431, 433 (Miss.2001); Tucker v. Prisock, 791 So.2d 190, 192 (Miss.2001)). For questions of law, however, we apply a de novo standard. Id. "Questions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact finder." Facilities, Inc. v. Rogers-Usry Chevrolet, Inc., 908 So.2d 107, 110(¶ 5) (Miss.2005) (quoting Parkerson v. Smith, 817 So.2d 529, 532 (Miss.2002)).
¶ 9. IMC's entitlement to attorney's fees involves the construction of a contract provision. Since we cannot determine, based on the chancellor's order denying IMC's motion for attorney's fees, whether his decision was based on legal or factual grounds, we will review his decision as to attorney's fees de novo. See Curtis v. Curtis, 796 So.2d 1044, 1049(¶ 17) (Miss.Ct. App.2001).

DISCUSSION
I. WHETHER THE CHANCELLOR'S FINDINGS OF FACT WITH RESPECT TO MOTE'S BREACH AND IMC'S DAMAGES ARE INCONSISTENT
¶ 10. The question that we must answer when reviewing a chancellor's damage award is not merely whether we would have awarded more or less damages; rather, our inquiry on appeal is whether there is substantial evidence to support the chancellor's findings. Edge v. Booneville, 226 Miss. 108, 109, 83 So.2d 801(1955).
¶ 11. In his opinion, the chancellor found that IMC proved that Mote breached the contract only with respect to Mote's failure to "tie in" a water pipe underneath the parking lot. The chancellor further held that there was insufficient proof "to support that part of the liability (compaction of parking lot) on the part of Mote and the damages." The chancellor awarded damages to IMC as follows:

 Driveways $2,970
 Repair Asphalt $ 210
 ______
 $3,180
 20% penalty $ 636
 ______
 $3,816

¶ 12. Mote does not challenge the chancellor's findings of fact as regards the company's liability for failure to "tie in" the pipe beneath the parking lot. Mote concedes that there is substantial evidence in the record to support the chancellor's findings of fact in all respects except one. According to Mote, the chancellor erroneously based his damage computation upon evidence which included damages for failure to compact, damages which the chancellor held were not established. We agree.
¶ 13. During trial, Harry Soldan, the owner of IMC, testified as to various damage amounts that IMC incurred as a result of Mote's breach. In conjunction with Soldan's testimony, a four-page itemized invoice from Driveways, Inc. was entered into evidence as exhibit four. Soldan explained during his testimony which amounts were incurred as a result of remedial *637 work. It is not clear from Soldan's testimony, however, or from exhibit four, which amounts were incurred solely as a result of Mote's failure to "tie in" the water pipe beneath the parking lot, as Soldan testified that some of the remedial work was performed because of Mote's failure to compact. In any event, the damage amounts awarded by the chancellor do not appear anywhere in Soldan's testimony nor do they appear in exhibit four. In other words, the amounts of $2,970, and $210, respectively, do not appear anywhere in Soldan's testimony or in the itemized invoice from Driveways, Inc., nor does any combination of amounts contained within the invoice add up to these amounts. The amounts of $2,970 and $210 do, however, match exactly amounts contained in exhibit three.
¶ 14. Exhibit three is a handwritten list describing four particular alleged breaches by Mote, and the monetary amounts incurred by IMC in remedying these alleged breaches. This list was prepared by Jimmy Hodnette, IMC's supervisor in charge of the building project in question. Of particular relevance are items three and four, which provide as follows:
3. [Mote] didn't compact sewer & water lines in parking lot, it rained we had to put extra soil cement in trenches to [stabilize] sub soil.
Driveway Inc.  $2970.00
4. He didn't compact sewer clean out in front of bldg after he dug it up, Because his men didn't tie pipe in. Asphalt settled & IMC had to reasphalt.
Hodnette  $210.00
Hodnette's testimony at trial confirmed that the amounts contained in items three and four to exhibit three, as the descriptions imply, included costs incurred to remedy Mote's alleged failure to compact sewer and water lines. These amounts  $2,970 and $210  match exactly the amounts awarded to IMC as damages in the chancellor's opinion. These amounts do not appear anywhere else in the record.
¶ 15. Consequently, we can reach no other conclusion but that the chancellor based his damage computation on the amounts contained in items three and four to exhibit three. The description of these items, item three in particular, include damages attributable to Mote's alleged failure to compact, liability for which the chancellor specifically held was not established. According to our supreme court, where a "chancellor's award . . . is not supported by substantial evidence but rather on the chancellor's mistaken view of the evidence," the chancellor's judgment must be reversed. Browder v. Williams, 765 So.2d 1281, 1287-88 (¶¶ 32, 36) (Miss. 2000). We find that to be the case here as the chancellor's damage award erroneously included damages that resulted from alleged breaches which the court found were not proven by IMC. Accordingly, we reverse and remand for further evidentiary findings as to the damage amounts attributable solely to Mote's failure to "tie in" the water pipe.
II. WHETHER THE CHANCELLOR ERRED BY NOT AWARDING REASONABLE ATTORNEY'S FEES TO IMC
¶ 16. IMC asserts on appeal that the chancellor erred by refusing to award reasonable attorney's fees as specifically provided for in the parties' contract. Mote counters that, at most, IMC is entitled to attorney's fees only with respect to the claims IMC proved at trial. Furthermore, Mote contends that IMC did not provide sufficient evidence to allow the chancellor to distinguish among fees attributable to IMC's meritorious claim and fees attributable to IMC's unproven claims. Therefore, Mote contends, the chancellor did not *638 abuse his discretion in denying attorney's fees. We agree.
¶ 17. Because the chancellor failed to make any factual or legal conclusions in his order denying IMC's motion for attorney's fees, and because this issue involves "[q]uestions concerning the construction of [a] contract[ ]," we are left to analyze the chancellor's decision de novo. Facilities, Inc., 908 So.2d at 110(¶ 5); see also Curtis, 796 So.2d at 1049(¶ 19) (finding that chancellor's failure to adopt findings of fact on adultery requires a de novo review on appeal). Our analysis requires, first, a determination as to the meaning of the attorney fee clause contained in the contract. In other words, we must determine the circumstances under which Mote is required to reimburse IMC's attorney's fees and the extent of the required reimbursement. Second, we must determine whether IMC provided sufficient evidence from which an appropriate fee award can be determined.
¶ 18. Attorney's fees can only be awarded pursuant to a relevant contractual provision, statutory authority, or where punitive damages are also proper. Hearn v. Autumn Woods Office Park Property Owners Ass'n, 757 So.2d 155, 164(¶ 49) (Miss.1999). The contract between IMC and Mote provided as follows:
It is agreed that in the event the Subcontractor fails or refuses to perform the work to the reasonable satisfaction of Contractor or Owner or fails to perform other conditions of this Agreement, and does not remedy, or commence diligently to remedy, such failure or refusal within three (3) working days after receipt of written notice from Contractor specifying such default, the Contractor may, without taking over the work, furnish the necessary materials and/or employ the workmen necessary to remedy the situation and charge the cost thereof to the Subcontractor, plus twenty percent (20%) to defray the overhead cost of Contractor. If Contractor takes over and completes this Subcontract, or relets same, due to default of Subcontractor, same shall not release Subcontractor for all damages suffered by Contractor due to the default of Subcontractor.
If it becomes necessary for Contractor to employ an attorney to enforce its rights against Subcontractor, Subcontractor agrees to pay a reasonable attorney's fee to such attorney plus all costs of litigation incurred by Contractor.
¶ 19. We agree with IMC's contention that enforcing a contract "without enforcing the clause addressing attorney fees would be contrary to the law." Theobald v. Nosser, 752 So.2d 1036, 1042(¶ 24) (Miss. 1999). This Court has held, however, that although "a case [may be] appropriate for the award of attorney's fees, the actual award of attorney's fees is still dependent upon specific proof." Romney v. Barbetta, 881 So.2d 958, 962(¶ 20) (Miss.Ct.App. 2004).
¶ 20. Mote contends that IMC asserted four distinct bases in support of its claim that Mote breached the contract between the parties. Mote then reasons that, since IMC proved breach based upon only one of these grounds, IMC is entitled to attorney's fees only with respect to the proven ground. Since IMC did not present evidence from which the chancellor could distinguish the attorney's fees, Mote asserts that the chancellor's denial of attorney's fees was appropriate. Mote cites A & F Properties, LLC v. Lake Caroline, Inc., 775 So.2d 1276 (Miss.Ct.App.2000) in support of its arguments.
¶ 21. In A & F Properties, we were faced with a contractual clause similar to *639 the clause at issue in the case sub judice.[3]A & F Properties, 775 So.2d at 1282-83(¶ 21). The contract dispute in that case involved the alleged breach of several distinct contractual provisions. One contract provision in dispute involved the duty of one of the parties to build an access road. Id. at 1276(¶ 3). Another disputed provision involved the right of one of the parties to have subdivision lots conveyed to it pursuant to a selection formula set out in the contract. Id. There, we determined "that the parties were entitled only to the fees for enforcing the specific contract provisions on which they prevailed." Id. at 1283(¶ 22).
¶ 22. Similarly, the attorney's fee clause in the instant case entitles IMC to reimbursement only for fees incurred enforcing the claim upon which it prevailed. According to the fee clause, Mote's duty to pay IMC's attorney's fees is triggered if and when "it becomes necessary for [IMC] to employ an attorney to enforce its rights against [Mote]." The trial court determined that IMC did not have a "right" to damages or other relief with respect to any claim except the proven claim that Mote failed to "tie in" the water pipe beneath the parking lot. Fees incurred prosecuting all other claims, consequently, were not incurred by IMC "to enforce its rights against [Mote]." Accordingly, as IMC had rights only with respect to Mote's failure to "tie in" the water pipe beneath the parking lot, Mote is liable for reasonable attorney's fees incurred in enforcing those particular rights. All other fees were not "necessary" within the meaning of the fee clause and could not, therefore, be "reasonable" as required by the fee clause.
¶ 23. Having found that IMC is entitled to attorney's fees associated with its prevailing claim, we must now determine whether there is sufficient evidence in the record to distinguish the reimbursable fees from the non-reimbursable. In support of its motion for attorney's fees, IMC submitted an itemized attorney bill, a summary of the proceedings, and an attorney affidavit. None of these items describe the nature of the attorney's fees in such a way that we can determine which expenses relate to which claims. In A & F Properties, as in the instant case, we held that each party was entitled to attorney's fees incurred only in connection with the "specific contract provisions" on which it prevailed. Id. at 1283(¶ 22). "Most of the remainder of the fees, such as those for . . . defense of the road widening claim and those for . . . pursuing the [unsuccessful] lot selection claim, must be paid by the party that incurred them." Id. Although we found that both parties were entitled to some reimbursement, we nonetheless reversed and rendered the jury award of attorney's fees because "[n]either bill was itemized in a way to determine what charges were billed on each issue." Id.
¶ 24. While we note that the chancellor in the instant case did not specify the grounds upon which he based his denial of IMC's motion for the award of attorney's fees, we nonetheless find that the chancellor did not commit reversible error as the record does not contain sufficient evidence from which the chancellor could have identified which fees were reimbursable. *640 "When a party proves liability but fails to present competent evidence on damages, that is a failure of proof and no damages should be awarded." Id. at 1283(¶ 23); see also Lovett v. E.L. Garner, Inc., 511 So.2d 1346, 1353 (Miss.1987) (reversing award of attorney's fees and rendering judgment for no fees where proof was insufficient as a matter of law). "While certainty is not required, a party must produce the best that is available to him." A & F Properties, 775 So.2d at 1283(¶ 25) (quoting Eastland v. Gregory, 530 So.2d 172, 174 (Miss.1988)).
¶ 25. We find that IMC had its chance to produce sufficient evidence but failed to do so. It would be inappropriate to give IMC another chance to present adequate evidence, especially in light of the fact that IMC was aware that it had prevailed on only one claim prior to filing the motion for award of attorney's fees. As we have stated, "[a] new opportunity at a new trial to present evidence is granted when judicial or jury error requires a reversal of the initial trial and the proper judgment is uncertain." Id. at 1284(¶ 27). The error in this case lies with IMC. Had IMC provided evidence from which the attorney's fees could be distinguished, we would be obligated to reverse the chancellor's judgment and remand for a determination of the "reasonable" fees to which IMC was entitled. That is not the case, however. Thus, we affirm the chancellor's denial of IMC's motion for the award of attorney's fees.

CONCLUSION
¶ 26. We conclude that the chancellor's damage award was based on amounts which included, at least in part, damages to which IMC was not entitled, and thus, was not supported by substantial evidence. On cross-appeal, we, therefore, reverse and remand this issue to the DeSoto County Chancery Court for a determination of the amount of damages suffered by IMC solely as a result of Mote's failure to properly "tie in" the water pipe. The twenty percent contractual penalty is then to be applied to that amount. We also find that, while IMC was entitled to some attorney's fees pursuant to the contract between the parties, IMC failed to provide sufficient proof to distinguish fees incurred in prosecuting the single claim upon which it prevailed. Accordingly, on direct appeal, we affirm the chancellor's denial of IMC's motion for award of attorney's fees.
¶ 27. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED ON DIRECT APPEAL AND REVERSED AND REMANDED ON CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT/CROSS-APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.
NOTES
[1] The interpleader complaint was largely uncontested by either defendant. Consequently, Barney Brothers was allowed to interplead the sum of $2,496.67, the amount Mote claimed it was owed on the final draw.
[2] The record reflects that IMC raised this issue during the trial itself. The chancellor agreed, and Mote did not object, that IMC could submit its request for attorney's fees by posttrial motion.
[3] The contractual provision at issue in A & F Properties provided as follows:

If it becomes necessary to insure the performance of the terms and conditions of this Contract by any party hereto having to employ an attorney, then the party admitting default, or the party adjudicated as the defaulting party by a court of competent jurisdiction, shall pay reasonable attorneys' fees and the court cost incurred, if any.
Id. at 1282-83(¶ 21).