754 So.2d 471 (1999)
Patricia CRASE, Appellant,
v.
Elizabeth R. HAHN, Diane Tippitt and Crye-Leike of Mississippi, Inc., Appellees.
No. 1998-CA-01160-COA.
Court of Appeals of Mississippi.
July 20, 1999.
Rehearing Denied October 19, 1999.
Certiorari Denied January 27, 2000.
*472 Christian T. Goeldner, Southaven, Attorney for Appellant.
Thomas Henry Freeland IV, Oxford, Kenneth E. Stockton, Hernando, Attorneys for Appellees.
BEFORE McMILLIN, C.J., IRVING, AND PAYNE, JJ.
IRVING, J., for the Court:
¶ 1. Patricia Crase appeals a Desoto County Court's judgment granting a directed verdict in favor of Elizabeth Hahn, Diane Tippitt and Crye-Leike of Mississippi, Inc. Crase was seeking damages for losses she allegedly sustained in the purchase of a house from the seller, Elizabeth Hahn, in which Diane Tippitt, employed by Crye-Leike, acted as the agent. Crase appealed to the Circuit Court of Desoto County which affirmed the judgment of the county court. Aggrieved, Crase files this appeal, requesting review of the directed verdict granted by the county court and affirmed by the circuit court. Finding no error, we affirm the judgments of the courts below.

FACTS
¶ 2. Patricia Crase purchased a house from Elizabeth Hahn, the seller. Diane Tippitt was Hahn's realtor, and Emmett Wade was Crase's realtor. Tippitt worked for Crye-Leike of Mississippi, Inc. Prior to purchasing the house, Crase and her husband were renting a house. They were under an agreement to vacate the rented house by October 31, 1995. On August 26, 1995, with the assistance of Tippitt, Hahn completed a Seller's Disclosure Statement as is required by Miss.Code Ann. § 89-1-509 (Rev.1991). The following *473 paragraphs are quoted from the disclosure statement. The first full paragraph reads in part:
The following is a DISCLOSURE STATEMENT made by the Seller, concerning the condition of the property located at: (address omitted). This DISCLOSURE is not a warranty of any kind by the Seller or any Agent of the Seller in this transaction and is not a substitute for any inspections or warranties the Purchaser may wish to obtain.
Another section of the Disclosure Statement reads in part as follows:
To the extent of the Seller's knowledge as a property owner, the Seller acknowledges that the information contained above is true and accurate for those areas of the property listed.
After execution of the Seller's Disclosure Statement, the property was subsequently shown to Crase who initially visited the home with her husband, Randy Crase (Randy), and an unnamed real estate agent. Crase visited the home on at least two other occasions with Wade to view the home and property. On one of those visits, Randy made a detailed inspection of the property and was given as much time as needed to inspect the property. Crase admitted to viewing the house two or three times in the evening hours after work.
¶ 3. On October 16, 1995, Crase, through Wade, made an offer to purchase the property. The Contract for the Sale and Purchase of Real Estate Purchase Agreement, prepared by Wade, contained the following language in paragraph No. 18:
CONDITION OF PROPERTY AND ACCEPTANCE: The property is being purchased "as is" and "where is" with the exception of matters addressed in this paragraph and paragraph No.11. Seller agrees to complete and provide to Buyer a copy of SELLER'S DISCLOSURE STATEMENT, required by State law. Buyer shall give timely written notice to Seller through the closing attorney or agent, of any reasonable repairs which may be needed, in order that Seller shall have a reasonable opportunity to do so before closing, or without substantial delay to the closing. If the cost of making necessary repairs, excluding repairs to equipment and appliances under paragraph No.17 shall exceed the sum of $350.00 (handwritten), Seller may void the contract, or make such repairs as are designated, at Seller's option if such repairs do not exceed $350.00 (handwritten) or Buyer gives a written waiver or repairs above such figure this contract shall remain in full force and effect.
Wade testified that he specifically read paragraph No. 18 to Crase and that she knew she was purchasing the house "as is." Further Crase acknowledged that she executed the Seller's Disclosure Statement on October 13, 1995, which contains the language previously recited and also contains the following paragraph printed immediately above her signature:
PURCHASER HEREBY ACKNOWLEDGES RECEIPT OF A COPY OF THIS SELLER'S DISCLOSURE STATEMENT. THE PURPOSE OF THIS FORM HAS BEEN EXPLAINED TO ME AND I HAVE BEEN GIVEN AMPLE TIME TO ASK QUESTIONS OR CHECK ALL AREAS OF POSSIBLE CONCERN TO ME.
Crase testified that none of the above-mentioned documents included the actual age of the house, disclosed the presence of major defects, nor disclosed that the house had been cut, moved and reassembled at its present location. The record shows that the Seller's Disclosure Statement approximates the age of the house and does not warrant the actual age of the house.
¶ 4. Prior to the closing, Crase conducted a property inspection on October 26, 1995, along with Wade and her husband. She admits to doing a detailed inspection at that time. At the conclusion of the home inspection, Crase executed a Property Inspection Letter which was provided *474 by Wade. The language immediately above her signature reads as follows:
WE HAVE EXAMINED THE ABOVE REFERENCED PROPERTY AND FIND THE PROPERTY IN SATISFACTORY AND ACCEPTABLE CONDITION, EXCEPT AS INDICATED ABOVE. FURTHERMORE, IT IS UNDERSTOOD THAT I/WE ARE ACCEPTING THE PROPERTY IN "AS IS" CONDITION AND REALIZE THAT IN SO DOING I/WE WAIVE ANY RIGHTS TO OBJECT OR CLAIM AGAINST THE SELLER OR HIS AGENT REGARDING THE CONDITION OF THE PREMISES.
¶ 5. It is uncontroverted that at the closing, Patricia and her husband learned for the first time that the house had been cut in half and moved to its present location and reassembled. It is further uncontested that at that point, Hahn, through her agent, gave Crase the option not to proceed with the purchase and offered to return the $5,000 earnest money. Randy Crase also testified that they were given the opportunity to delay the closing in order to have the home inspected. Crase testified, however, that they decided to proceed with the purchase because they had expended a large amount of money in an effort to get the house, and because they had no where else to go. As far as the repairs were concerned, Hahn agreed to refund $350 for the repairs listed on the Property Inspection Letter.
¶ 6. Randy testified that after the purchase he conducted a closer inspection of the house and discovered some problems. Thereafter, Randy hired Bob Zurla, the owner of Southaven Home Improvement, to look at the defects and estimate repairs. During Zurla's testimony, he described the problems with the house and stated that each problem was readily visible. Zurla found problems with the foundation and the inside decorative beam; he also found stress cracks and sheetrock damage, as well as, exposed plumbing under a bathroom vanity. Randy testified that most of the defects were claimed by the seller to be cosmetic. One of the major items of repair involved the installation of a french drain to prevent water draining downhill from going into the garage. All of the repairs were identified by Zurla through visual inspection and could be made without requiring demolition. Zurla estimated the repairs would cost approximately $29,000.

DISCUSSION

Did the trial court err in granting Hahn, Tippitt and Crye-Leike's motion for directed verdict?
¶ 7. The trial court, in considering a motion for directed verdict, must view the evidence in the light most favorably to the non-moving party. Turnbough v. Steere Broadcasting Corp., 681 So.2d 1325, 1327 (Miss.1996). The case should not be taken from the jury unless the non-moving party's evidence is so lacking that reasonable jurors would be unable to reach a verdict in favor of that party. Tate v. Southern Jitney Jungle Company, 650 So.2d 1347, 1349 (Miss.1995). If so lacking, then granting the motion is proper. Id. On review, we must consider the evidence in that same light. Id. In the case at bar, Hahn, Tippitt and Crye-Leike moved for a directed verdict at the close of Crase's case, which was granted. Crase asserts that the jury could have rendered a favorable verdict to her claims of breach of contract, breach of express warranty, economic duress, negligence and statutory liability under Miss.Code Ann. § 89-1-523 (Rev.1991) and Miss.Code Ann. § 73-35-31 (Rev.1991). We disagree. We, therefore, find that the trial court's granting of the motion was appropriate.
¶ 8. Crase asserts that Hahn, Tippitt and Crye-Leike breached the contract and express warranty and made negligent misrepresentations by failing to provide in the disclosure statement, information pertaining to the true age of the house, the need for extensive repairs, and that the *475 house had been cut and moved. Crase, however, fails to appreciate the effect that the "as is" clause has on the entire transaction. The controlling case law in Mississippi on the "as is" clause is Stonecipher v. Kornhaus, 623 So.2d 955 (Miss.1993). In Stonecipher the purchaser executed a sales contract with an "as is" provision and an "acceptance" provision. Id. at 963. The Stoneciphers brought suit on the contract in order to collect damages for injuries caused by a latent defective tree on the property. The appellees argued that the presence of the "as is" clause in the contract exempted them from liability pertaining to the condition of the property. In accepting the appellees argument, the Mississippi Supreme Court concluded that the Stoneciphers were bound by the mutually agreed upon terms of the contract. Id. The Stoneciphers, therefore, were precluded from maintaining suit against the vendors. Id. at 964.
¶ 9. Just as in Stonecipher, Crase signed a contract with an "as is" provision, as well as, an "acceptance" provision; therefore, she is bound by the mutually agreed upon terms of the contract and has thus waived the right to maintain an action on the contract. Moreover, the disclosure form does not warrant the actual age of the house, but rather approximates the age. Further, the disclosure form mentions that the house had been moved. While this statement was not included on the disclosure form when Crase signed it on October 13, 1995, it was, as previously stated, brought to her attention at closing, and she was given an opportunity to back out of the deal which she declined. It is, therefore, clear that no warranties were made by Hahn in the contract or disclosure statement. Crase is bound by the terms of those instruments.
¶ 10. There is no contention in the record that Crase did not understand the terms of the contract and disclosure statement, and no tenable argument could be made to that effect. Wade, Crase's own witness, testified that he read the "as is" clause to Crase in the seller's disclosure statement, and she acknowledged that she understood it. Additionally, after Crase had been informed of the age and condition of the house and after having been given the opportunity not to proceed with the purchase, she still decided to proceed.
¶ 11. Another of Crase's witnesses, Bob Zurla, testified that the defects were patent; therefore, she should have been on notice as to the existence of the same. Crase was in just as good of a position as Hahn, Tippitt and Crye-Leike to discover the defects. Stonecipher, 623 So.2d at 963. Because Crase executed a contract, disclosure statement and property inspection letter with an "as is" provision and proceeded with the "as is" transaction after being informed of her opportunity to opt out, she has waived her right to assert any contract-based claim to the contrary.
¶ 12. Crase, however, contends that Miss.Code Ann. § 89-1-523 (Rev. 1991) has changed the construction of the clause "as is" to mean "as disclosed." Crase asserts no authority for this claim; therefore, we reject this contention. See Hoops v. State, 681 So.2d 521, 526 (Miss. 1996). Crase also asserts that she proceeded with purchase under economic duress because she was under an obligation to vacate her rented premises, had exhausted her financial resources, and had no place to go. In order to prove economic duress, Crase must establish (1) that the dominant party threatened to do something which they had no legal right to do and (2) that the wrongful threat overrode the volition of the victim and caused her to enter an agreement against her free will. Kelso v. McGowan, 604 So.2d 726, 732 (Miss.1992). Hahn never threatened Crase; in fact, Hahn offered to allow Crase to walk away from the deal. No threat being present, Crase's claim lacks merit.
¶ 13. Crase is bound by the "as is" clause of the contract; therefore, we find no need to address the other claims raised. *476 The lower court's decision to grant the motion for directed verdict is affirmed.
¶ 14. THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT GRANTING A MOTION FOR DIRECTED VERDICT IN FAVOR OF ELIZABETH HAHN, DIANE TIPPITT, CRYE-LEIKE OF MISSISSIPPI, INC. IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED AGAINST PATRICIA CRASE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
MOORE, J., NOT PARTICIPATING.