MAXWELL, J.,
for the Court:
¶ 1. Arthur and Linda Brown sued James and Laura Anderson for breach of contract and tortious breach of contract stemming from the Browns’ purchase of *880 the Andersons’ house. After the Browns presented their case to a jury, the Hinds County Circuit Court granted the Andersons’ motion for a directed verdict. The circuit judge held, because Arthur signed a release stating the house’s systems were in good working order at closing, Arthur could not prove the Andersons breached the sales contract by conveying the house without working electrical, plumbing, HVAC, and hot water. On appeal, the Browns argue the circuit court erroneously applied the release. We find Arthur was bound by the release. And based on the language of the contract and release, we find the Browns failed to present a claim for breach of contract and tortious breach of contract. Thus, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Linda contacted her realtor about showing her the Andersons’ home in By-ram, Mississippi. After visiting the home several times, Linda and Arthur decided to make an offer on the house. On June 22, 2002, Linda signed the contract using Arthur’s name. Although warranting that the plumbing, electric, heating and air-conditioning systems would be in working order on the closing date, the contract encouraged Arthur to perform a pre-clos-ing inspection because the contract stated Arthur had inspected the property and, subject to the inspection allowed in the contract, “accepts property ‘as is.’ ”[1] The contract also contained a handwritten contingency that stated “all plumbing, electrical, hot water heater, appliances, central heat and central air [would be] in good working order at closing.”
¶ 3. Though the Browns claim their realtor and mortgage broker told them the inspection would be taken care of, the Browns admit they did not have the house inspected before closing. On the day of the closing, July 23, 2002, Arthur signed a “walk-thru inspection release.” This release states that Arthur had inspected the property and “found the following items, evidenced by a check mark to be in good working ORDER and or normal condition .... ” The release contained check marks next to “heating unit,” “air conditioner,” “electrical,” “water heater,” and “plumbing,” as well as other items. Arthur went through with the closing, and the Browns took possession of the home.
¶ 4. The Browns claim that they discovered, within a few weeks of closing, they had bought a “hell house” with faulty electrical, plumbing, HVAC, and hot water. Several weeks after the closing they paid for a home inspection. The inspection revealed problems with each of these systems. On December 31, 2002, Linda and Arthur sued their mortgage company, their realtor, the Andersons’ realtor, and the Andersons based on eighteen different theories of liability. During the ensuing eight years of litigation, most parties and claims were dismissed. But the breach of *881 contract and tortious breach of contract claim against the Andersons survived and were finally tried in August 2010.
¶ 5. On their breaeh-of-contract claim, the Browns had the burden to prove by a preponderance of the evidence that: (1) a valid and binding contract existed; (2) the Andersons breached the contract; and (3) the Browns were damaged monetarily. Warwick v. Matheney, 603 So.2d 330, 336 (Miss.1992). To establish tortious breach of contract, the Browns had to prove breach of contract “coupled with ‘some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort.’ ” Robinson v. S. Farm Bureau Cas. Co., 915 So.2d 516, 520 (¶ 14) (Miss.Ct.App.2005) (quoting Wilson v. Gen. Motors Acceptance Corp., 883 So.2d 56, 66 (¶ 40) (Miss.2004)).
¶ 6. After the Browns presented their case in chief to the jury, the circuit judge granted the Andersons’ motion for a directed verdict. The circuit judge found there had been no evidence presented that the Andersons committed an intentional wrong, insult, abuse, or gross negligence to support its tortious breach claim. Though the evidence showed Arthur had entered a binding contract with the Andersons, Arthur was likewise bound by the release he had signed, which stated he had inspected the property and accepted the electrical, plumbing, HVAC, and hot water as being in “good working order.” Therefore, the circuit judge found there was no evidence the Andersons breached the contract by not providing these systems in good working order.
STANDARD OF REVIEW
¶ 7. We review the grant of a directed verdict de novo, considering the evidence in the light most favorable to the non-moving party and giving that party all reasonable favorable inferences from the evidence presented at trial. Houston v. York, 755 So.2d 495, 499 (¶ 12) (Miss.Ct.App.1999) (citation omitted). If the facts and inferences “create a question of fact from which reasonable minds could differ,” a trial court should not grant a directed verdict but instead submit the matter to the jury. Ducksworth v. Wal-Mart Stores, Inc., 832 So.2d 1260, 1262 (¶2) (Miss.Ct.App.2002).
DISCUSSION
¶ 8. The Browns argue the circuit judge erroneously relied on the release to hold that they failed to create a jury question on whether the Andersons had breached the contract. But we find the circuit judge was correct that Arthur was bound both by the contract, wherein he agreed he “accepts property ‘as is,’ ” and by the release, which stated he had inspected the home’s systems and found them in “good working order.” Because Arthur acquiesced to the fulfillment of the contract’s contingencies that the house would be in good working order at closing, he could not later assert an inconsistent position that the Andersons had breached the contract by failing to convey the house in working order.
I. Arthur’s Representations in the Contract and Release
¶9. Both home buyers and home sellers are responsible for knowing the terms of sales contracts. “Under Mississippi law, ... parties to a contract have an inherent duty to read the terms of a contract prior to signing; that is, a party may neither neglect to become familiar with the terms and conditions and then later complain of lack of knowledge, nor avoid a written contract merely because he or she failed to read it or have someone else read and explain it.” MS Credit Ctr., Inc. v. *882 Horton, 926 So.2d 167, 177 (¶31) (Miss.2006).
¶ 10. This contract gave Arthur the opportunity to have the home inspected before closing to ensure it was in good working order. The specific contract provision states: “Purchaser represents that Purchaser has inspected Property as of the date of this Purchase Agreement, and subject to the inspections allowed herein, accepts property ‘as is.’ ”
¶ 11. In Crase v. Hahn, 754 So.2d 471, 475-76 (¶¶ 11-13) (Miss.Ct.App.1999), this court affirmed a directed verdict in favor of a home seller based on a binding “as is” clause in a sales contract. Like Arthur, Patricia Crase was given the opportunity to inspect a home prior to closing and to refuse to close if the home was not in satisfactory condition. Id. at 475 (¶ 9). At closing, Crase learned the house had been previously cut in half, transported, and reassembled in its current location. But Crase still decided to close on the house. Id. Only after closing did Crase perform a closer inspection and discover problems. In affirming the directed verdict, this court held that Crase “fail[ed] to appreciate the effect that the ‘as is’ clause has on the entire transaction.” Id. at 475 (¶ 8). Here, as clearly evidence by the “as is” clause, the contract stated the time for inspection was prior to closing — not several weeks after.
¶ 12. Arthur’s contract also included as a contingency to closing that “all plumbing, electrical, hot water heater, appliances, central heat and central air [be] in good working order at closing.” As the undisputed trial evidence showed, Arthur completed the closing without complaining any of these contingencies had not been met. He also represented in the release that he had inspected all of these systems and found them to be “in good working order.”
¶ 13. But the Browns argue: (1) the release only applied to the Andersons’ realtor, Ruth Epps Realty Inc., and not the Andersons; and (2) Arthur created a jury issue by testifying that, even though he signed the release, he did not inspect the items on the checklist.
¶ 14. While the release expressly relieved only Ruth Epps Realty Inc. from any further liability and responsibility,[2] Arthur represented in the release that he had personally inspected the house and found all of these systems to be in good working order. Thus, it was not specifically the relief-from-liability clause that the circuit court enforced against Arthur but instead his representations just prior to closing about the “working order” of the home’s various systems.
¶ 15. Further, we find no jury issue surrounding the effect of Arthur’s representations in the contract and release. Arthur did not deny he authorized Linda to sign the contract on his behalf. And it is undisputed that Arthur signed the release and went through with the closing without a single complaint that the contingencies to closing — the good working order of “all plumbing, electrical, hot water heater, appliances, central heat and central air” — had not been met. The circuit court correctly rejected Arthur’s trial testimony that was inconsistent with his representations in the release. Having acquiesced to the working order of the home in order to go through with the closing, Arthur was estopped from denying the veracity of his representations made at closing. Bailey v. Estate of Kemp, 955 So.2d 777, 782 (¶ 21) (Miss.2007).
*883 II. Linda’s Claim
¶ 16. The Browns further argue the release could not have been used against Linda’s claim for breach of contract because Linda did not sign the release. But this argument overlooks the crucial fact that Linda did not enter the contract with the Andersons. The contract solely listed “Arthur Lee Brown” as the purchaser. No where does it mention “Linda Jackson Brown.” While Linda testified she was the one who physically signed the contract, she admitted she signed “Arthur L. Brown,” on Arthur’s behalf. Thus, the contract did not create any contractual duties of the Andersons to Linda, either as a party or third-party beneficiary. Burns v. Washington Sav., 251 Miss. 789, 796, 171 So.2d 322, 325 (1965) (holding that in order to maintain an action for breach of contract as a third-party beneficiary to the contract, “the right of the third party beneficiary to maintain an action on the contract must spring from the terms of the contract itself’). And because Linda was not a party or third-party beneficiary to the contract, she had no right to maintain a cause of action based on the contract. Id. at 798-99, 171 So.2d at 326. The circuit judge properly granted a directed verdict dismissing Linda’s claim against the Andersons.
CONCLUSION
¶ 17. Viewing the facts in the Browns’ favor, we find they failed to create a factual issue as to why the Andersons should be liable for the Browns’ dissatisfaction with the home they purchased. The Andersons gave Arthur the opportunity to forego closing on the house if an inspection revealed the house’s systems were not in working order. The Andersons also completed the closing based on Arthur’s representation that the house’s systems were in working order.
¶ 18. Arthur accepted the home “as is” without a home inspection. And he presented no evidence that the Andersons contributed in any way to his failure to obtain a home inspection prior to closing. Thus, the circuit court correctly held the Browns failed to provide any evidence the Andersons had breached the sales contract.
¶ 19. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, RUSSELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT.

. Section 14 of the contract for sale provided:
PRE-CLOSING INSPECTION: Seller warrants that all plumbing, electric, heating and air conditioning systems, all equipment and appliances which convey with the property will be in working order on closing date or upon possession, whichever occurs first, unless specifically excluded herein. Purchaser has the right and is encouraged to make a pre-closing inspection to determine their working order. The Purchaser acknowledges that he has not relied upon any statements or representations by the undersigned Seller, Listing Firm or Selling Firm which are not herein expressed. Purchaser represents that Purchaser has inspected Property as of the date of this Purchase Agreement, and subject to the inspections allowed herein, accepts properly “as is." ...
(Emphasis added).

. The release stated Arthur "relievefd] RUTH EPPS REALTY, INC. from any further liability and responsibility now or in the future in regards to this property.”