## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00817-COA

HINDS COUNTY ECONOMIC DEVELOPMENT                    APPELLANT
DISTRICT

v.

W & G PROPERTIES, LLC AND MAGNOLIA                    APPELLEES
LABEL CO., INC.

DATE OF JUDGMENT:           05/06/2013
TRIAL JUDGE:                HON. WINSTON L. KIDD
COURT FROM WHICH APPEALED:  HINDS COUNTY CIRCUIT COURT,
                            FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:    J. LAWSON HESTER
                            JASON EDWARD DARE
ATTORNEYS FOR APPELLEES:    JUDSON MORGAN LEE
                            HENRY TOBIAS COLEMAN
NATURE OF THE CASE:         CIVIL - CONTRACT
TRIAL COURT DISPOSITION:    FOUND APPELLANT BREACHED
                            CONTRACT; AWARDED DAMAGES
                            TOTALING $194,154.95, PLUS
                            POSTJUDGMENT INTEREST OF EIGHT
                            PERCENT TO APPELLEES
DISPOSITION:                REVERSED AND RENDERED - 10/25/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE ISHEE, P.J., FAIR AND JAMES, JJ.**

**JAMES, J., FOR THE COURT:**

¶1.    This appeal arises from a civil suit filed by W&G Properties LLC ("W&G") and

Magnolia Label Co. Inc. ("Magnolia Label") against the Hinds County Economic

Development District ("HCEDD"). HCEDD appeals from the Hinds County Circuit Court's

interpretation of a contract and the award of damages to W&G and Magnolia Label. Finding

error, we reverse and render the circuit court's judgment and award of damages.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

¶2.     Magnolia Label, a Mississippi corporation, manufactures adhesive labels for consumer retail products.  W&G is a limited-liability company that serves as Magnolia Label's holding company.  W&G purchases and holds real estate and leases it to Magnolia Label.  Magnolia Label's founder and chief executive officer, Wally Fields, was also the chief executive officer of W&G.  HCEDD is a political subdivision of the State of Mississippi, governed by Mississippi Code Annotated section 19-5-99 (Rev. 2012).  As an entity, HCEDD has the power to purchase and sell real estate.

¶3.     W&G entered into negotiations with HCEDD to acquire four acres of real property in the McDonald Industrial Park.  On March 3, 2004, W&G offered to purchase four acres of land located within the McDonald Industrial Park.  On March 30, 2004, Jason H. Brookins, HCEDD's executive director, sent a letter to Fields, making a counteroffer to sell the property for $20,000 per acre.  On April 12, 2004, Fields provided HCEDD with a counteroffer to purchase the same property for $16,000 per acre.  On April 28, 2004, HCEDD authorized and approved the sale of the property to "Magnolia Label at the price of $16,000 per acre."  Brookins executed the agreement dated April 12, 2004, on behalf of HCEDD.

¶4.     W&G obtained a survey of the land from Drake, Davis & Rankin Engineers on the same day as closing.  On May 10, 2004, the real-estate transaction closed. Brookins signed on behalf of HCEDD, and Fields signed on behalf of W&G.  Magnolia Label was not a

2

signatory to this agreement.

¶5.     In July 2004, W&G began construction of Magnolia Label's new operating facility. In August 2004, W&G's contractor discovered that there was no power on the property. Temporary power had to be installed, delaying construction. In January 2005, W&G's plumbing contractor also discovered that there were no sewer lines on the property.

¶6.     W&G and Magnolia Label filed suit against HCEDD on March 10, 2006, seeking damages for breach of contract. HCEDD filed its answer on May 10, 2006. HCEDD filed a motion to dismiss on June 27, 2006, which alleged that: (1) W&G could not recover under a breach-of-contract claim premised upon the language of the contract and (2) W&G's claims for fraudulent misrepresentation, fraudulent inducement, negligent misrepresentation, breach of the duty of disclosure, and breach of the covenant of good faith and fair dealing were barred by the one-year statute of limitations under the Mississippi Torts Claims Act (MCTA). The trial court denied this motion on March 2, 2009.

¶7.     A bench trial began on June 6, 2011. At the start of trial, W&G dismissed all of its torts claims and proceeded solely on the breach-of-contract claim. The trial concluded on June 10, 2011. On April 25, 2013 the trial court entered its opinion and order finding that the contract between the parties was breached. Explaining this ruling, the trial court stated:

> On March 3, 2004, Magnolia Label offered to purchase four acres of property for $11,250.00 per acre. This offer, made on a form provided by HCEDD, was rejected when HCEDD sent a March 30, 2004[] counter-offer for Magnolia Label to purchase the four acres for $20,000.00 per acre. On April 12, 2004, on an HCEDD form, a counter-offer was made for W&G to purchase the four acres for $16,000.00 per acre. On April 28, 2004, this counter-offer was rejected when HCEDD's Board resolved to sell the four acres for $16,000.00 to Magnolia Label rather than W&G. On May 10, 2004,

3

the property was transferred at closing to W&G properties and payment of $64,000.00 was made to HCEDD. The closing on this conveyance amounted to a counter-offer. "A reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but a counter-offer." Restatement (Second) of Contracts § 59. The Court finds HCEDD accepted this counter-offer by closing on the property.

The Court further finds HCEDD agreed to sell the property in the McDonald Park with sewer lines running through the frontage road portion of said property and 3-phase electrical power on-site. The evidence at trial established that all of the parties believed sewer lines ran directly underneath the property along the frontage road and 3-phase power was within the confines of [the] industrial park. [Benjie] Barham, [Jason] Brookins, and Dr. [George] French all admitted they believe there were sewer lines running through the property at the time it was sold. Additionally, Barham testified that he represented 3-phase power was located "on[-]site."

. . . .

The Court next determines whether there are writings between the parties sufficient to satisfy the statute of frauds. HCEDD contends the Agreement for Purchase and Sale of Real Estate dated April 12, 2004, between HCEDD and W&G is controlling. The Court disagrees. As it asserted at trial, HCEDD is an economic development district that speaks through the minutes of its Board of Trustees. *See* Miss. Code § 19-5-99(5)(a). HCEDD's Board did not attach the April 12, 2004[] Agreement for Sale and Purchase of Real Estate to its minutes until February 7, 2005, after Magnolia Label complained about the lack of utilities. Moreover, the document was attached without any reference to it in the minutes.

The Court does, however, look to HCEDD's minutes for guidance. On April 28, 2004, HCEDD approved the sale of "four plus acres of land in the McDonald Park to Magnolia Label . . . at the price of $16,000.00 per acre." This was the only entry in HCEDD's Board minutes reflecting and approving the agreement. These signed and attested minutes constitute a "writing" sufficient to satisfy the statute of frauds and to be enforced against HCEDD. *See Putt v. City of Corinth*, 579 So. 2d 534 (Miss. 1991). Other writings in evidence memorializing the agreement include marketing materials representing that sanitary sewer and 3-phase power are "on-site," and correspondence between the parties regarding the lack of sewer.

4

¶8. On May 6, 2013, the trial court entered a judgment of $194,154.95, plus postjudgment interest of eight percent. On May 16, 2013, HCEDD filed its notice of appeal and a motion to alter or amend the judgment as to the postjudgment interest. On September 30, 2013, the trial court denied that motion. HCEDD timely appealed raising the following contentions: (1) the trial court erred in concluding that HCEDD breached a contract with W&G and Magnolia Label, and (2) the trial court erred in awarding damages to W&G and Magnolia Label for the alleged breach of contract.

**STANDARD OF REVIEW**

¶9. Findings of fact made by a trial court will not be disturbed when supported by substantial evidence, unless we can say with reasonable certainty that the trial court abused its discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. *White v. Cooke*, 4 So. 3d 330, 333 (¶12) (Miss. 2009). "For questions of law, however, we apply a de novo standard. Questions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact-finder." *Indus. & Mech. Contractors of Memphis Inc. v. Tim Mote Plumbing LLC*, 962 So. 2d 632, 636 (¶8) (Miss. Ct. App. 2007) (internal citations and quotation marks omitted).

**DISCUSSION**

> **I.** **Whether the trial court erred in finding that HCEDD breached a contract with W&G and Magnolia Label.**

¶10. The breach-of-contract claim relates to whether W&G contracted for the presence of a sewage system and three-phase electrical power in the agreement to purchase land at

5

McDonald Industrial Park. "The elements of breach of contract are: (1) the existence of a valid and binding contract; (2) breach of the contract by the defendant; and (3) money damages suffered by the plaintiff." *Guinn v. Wilkerson*, 963 So. 2d 555, 558 (¶8) (Miss. Ct. App. 2006). For this reason, we first must determine if a valid and binding contract existed.

### A. Whether the agreement for the sale and purchase of real estate dated April 12, 2004, is a valid and binding contract.

¶11. In its complaint, W&G alleged that the April 12, 2004 agreement was the contract upon which its claim was founded. HCEDD admitted in its answer that the April 12, 2004 agreement was executed between the parties. At the beginning of trial, W&G proceeded under a theory of fraud or mistake. HCEDD, in response, made the trial court aware that it would not try the issue of mutual mistake by consent. W&G, nevertheless, argued that the April 12 agreement should be modified to include provisions related to a sewer line and three-phase electrical-power capabilities on the property. The trial court, however, did not hold that the agreement should be modified and found, instead, that the April 12 agreement was not the contract at issue between HCEDD and W&G. The trial court found that a contract was created between the parties when they closed on the property on May 10, 2004. The trial court then looked to HCEDD's minutes and other writings in evidence to establish the terms of that agreement.

¶12. The Mississippi Supreme Court has consistently held that the elements of a valid contract are: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Rotenberry v. Hooker*, 864 So.

6

2d 266, 270 (¶13) (Miss. 2003). Moreover, it is well established that the court should first examine the four corners of the contract to determine how to interpret it. *Id*. at (¶14). The intent of the contract must be effectuated if the contract's language is clear and unambiguous. *Id*. The court should only look to extrinsic evidence when the intent of the parties is not clear. *Id*.

¶13.    When determining the intent of the parties, we have to take into consideration that HCEDD is an economic development district operating under section 19-5-99 of the Mississippi Code Annotated. HCEDD, therefore, is bound by the public-contracts doctrine. It is well settled that HCEDD "can act only as a body, and its act must be evidenced by an entry on its minutes. The minutes of the board of supervisors are the sole and exclusive evidence of what the board did." *Cmty. Extended Care Ctrs. Inc. v. Bd. of Supervisors for Humphreys Cty.*, 756 So. 2d 798, 802 (¶17) (Miss. Ct. App. 1999). The fact that in some instances the rule may work an apparent injustice does not negate the stringent requirement. *Butler v. Bd. of Supervisors for Hinds Cty.*, 659 So. 2d 578, 582 (Miss. 1995). The Board is only bound by a contract entered upon its minutes. *Id*. at 581.

¶14.    The trial court held that the April 28 minutes were a formal rejection of the April 12 agreement because the Board authorized Brookins to contract with Magnolia Label, not W&G. The trial court, instead, found that W&G's participation in the closing constituted a counteroffer that HCEDD accepted on May 10, 2004.

¶15.    We disagree. On April 12, 2004, Fields provided HCEDD with a counteroffer to purchase the four-plus acres for $16,000. On April, 28, 2004, the Board authorized and

7

approved the sale of the property at the price of $16,000 per acre to Magnolia Label. Brookins executed the April 12 agreement on behalf of HCEDD. On May 10, 2004, both parties signed a closing document that stated that the property listed in the closing document was being sold "as defined in the agreement for sale and purchase of real estate, dated *April 12, 2004*" (emphasis added). And on February 7, 2005, the April 12 agreement was attached to HCEDD's Board's minutes. The May 10, 2004 closing documents were never attached to the Board's minutes and, thus, cannot be the contract between the parties. Furthermore, Magnolia Label was not a signatory on the May 10 closing statement. We find that Magnolia Label is not a party to the April 12 contract. We also find that the April 12 agreement is the contract at issue between W&G and HCEDD because the agreement satisfies all of the elements of a valid contract.

¶16.   The following are pertinent excerpts from the April 12 contract:

### AGREEMENT FOR SALE AND PURCHASE OF REAL ESTATE

This Agreement for Sale and Purchase of Real Estate ("Agreement["]) is made and entered into on the 12[th] day of April, 2004, by and between the Hinds County Economic Development District ("Seller") and W&G Properties ("Buyer").

Seller and Buyer agree as follows:

1.   **PROPERTY**.  Seller agrees to sell to Buyer, and Buyer agrees to purchase from Seller, a parcel of land situated in the 1st Judicial District of Hinds County, Mississippi, and more particularly described on Exhibit A attached hereto and incorporated herein by this reference (the "Property").

2.   **PURCHASE PRICE**.      The purchase price for the Property shall be Per acre Price of $16,000.00 Per acre for 4 + - acres DOLLARS ($16,000.00). The purchase price shall be paid to Seller at the closing.  The purchase price may be paid in cash, but not over $1,000.00, or by certified check of Buyer or

8

cashier's check or official check of any bank, savings bank, trust company or savings and loan association having a banking office in the State of Mississippi, payable to the order of Seller.

. . . .

7.      **CONDITION OF PROPERTY**.   Buyer's obligation to purchase the Property shall be contingent upon delivery of the Property in its present condition.  In the event of material damage to the Property by fire or other casualty before the closing, Buyer may ([i]) by written notice to Seller, terminate this Agreement, or (ii) take an assignment of all insurance proceeds, if any, from Seller and purchase the Property in its current condition.  Buyer represents and warrants that it is or, prior to closing shall become, familiar with the condition of the Property.  **SELLER HAS NOT MADE AND MAKES NO WARRANTIES OR REPRESENTATIONS REGARDING THE PROPERTY, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ITS HABITABILITY, CONDITION OR FITNESS FOR ANY PARTICULAR USE OR PURPOSE.  BUYER AGREES THAT THE PROPERTY SHALL BE CONVEYED BY SELLER AND ACCEPTED BY BUYER IN AN "AS IS" CONDITION EXISTING ON THE DATE POSSESSION OF THE PROPERTY IS TRANSFERRED TO BUYER.**

. . . .

9.      **REPRESENTATIONS**.   Buyer has not relied upon any statement or other information made to any person, directly or indirectly, orally or in writing, by seller or any person action on behalf of Seller, and Buyer hereby releases Seller, its attorneys, employees, agents and representatives, from any liability and responsibility arising from any such statement or information and any inaccuracy or incompleteness thereof.

. . . .

11.     **DUE DILIGENCE**.     Buyer and its agents, representatives and appraisers shall have full access to the Property during the period of forty-five (45) days following the Effective Date in which to inspect and obtain information concerning the Property.  In the event Buyer shall determine, in its sole discretion, that it will not purchase the Property**,** Buyer may, during such 45-day period, notify Seller in writing of such determination, in which event the Agreement shall be terminated and Buyer shall have no further obligations hereunder.

12.    **ENTIRE  AGREEMENT;  BINDING  EFFECT**.    All  prior understandings and agreements between Seller and Buyer are merged into this Agreement and this Agreement represents the entire agreement between the parties.    This  Agreement  shall  be  binding  upon  the  heirs,  executors, administrators, successors and assigns of the respective parties.

13.    **AMENDMENTS**.  This Agreement may be amended solely by an instrument in writing executed by both the parties.

. . . .

15.    **ASSUMPTION OF LIABILITY**.  Buyer agrees to assume and to waive,  release,  indemnify,  defend  and  hold  harmless  Seller,  its  trustees, employees,  agents  and  representatives  from  and  against  all  claims,  demands, damages,  costs  and  expenses,  including  legal  fees,  court  costs,  awards, settlements, judgments, penalties, fines, liens or causes of action, at law or in equity, arising out of or relating to the ownership or use of the Property after the  closing.    The  provisions  of  this  section  shall  survive  the  closing,  and provisions  substantially  similar  to  these  shall  be  incorporated  in  the  deed conveying the Property to Buyer.

(Emphasis in original).

¶17.    This Court also must determine if the April 12 contract included an agreement to sell the property with sewer lines and three-phase electrical power on-site.  W&G argues that Brookins's assurance, as the Board's representative, that the four acres had power and sewer lines was properly admitted as parol evidence to prove that these provisions were a part of the April 12 agreement.  We disagree, because this argument is contrary to our precedent. Under our law, parol evidence is not admissible to show what action the Board took because the Board's minutes are the exclusive evidence of what the Board did.  *Myers v. Blair*, 611 So. 2d 969, 972 (Miss. 1992). Only the Board, through its minutes, could have made such representations to W&G for those assurances to be admitted as parol evidence.

10

¶18. In this case, it is undisputed that there is nothing in the minutes of any meeting of HCEDD's Board of Supervisors that records or references representations that sanitary sewer and three-phase power were on the property at issue. Moreover, the minutes show that Brookins was only authorized to enter into the April 12, 2004 agreement that was later signed by both parties. Nowhere in that April 12 agreement does it indicate that W&G would only purchase the land if power and sewer lines were present. The April 12 agreement was clear and unambiguous, and the trial court should not have looked outside its four corners to determine the parties' intentions. Once the Board authorized Brookins to sell the property according to the April 12 agreement, W&G's offer to purchase the property on the April 12 agreement created a valid contract.

**B.     Whether there was a valid breach-of-contract claim under the agreement of sale dated April 12, 2004.**

¶19. "Under Mississippi law, . . . parties to a contract have an inherent duty to read the terms of a contract prior to signing." *Brown v. Anderson*, 80 So. 3d 878, 881 (¶9) (Miss. Ct. App. 2012). "[A] party may neither neglect to become familiar with the terms and conditions and then later complain of lack of knowledge, nor avoid a written contract merely because he or she failed to read it or have someone else read and explain it." *Id*. The trial court found that HCEDD breached its contractual obligation because the property failed to have a sewer line and three-phase power. But the promise that a sewer line and three-phase power line would be on-site is not found within the four corners of the April 12 agreement. This agreement, however, contains an "as is" provision, which states:

Seller has not made and makes no warranties or representations regarding the

11

property, express or implied, including, without limitation, its habitability, condition or fitness for any particular use or purpose. Buyer agrees that the property shall be conveyed by seller and accepted by buyer in an "as is" condition existing on the date possession of the property is transferred to buyer.

¶20. The "as is" clause in the agreement exempted HCEDD from liability pertaining to the condition of the property. *See Beaumont Homes LLC v. Colonial/Jordan Props. LLC*, 71 So. 3d 1238, 1240 (¶8) (Miss. Ct. App. 2011). There are no contentions before this Court that W&G is not a sophisticated party in the business of purchasing real estate and did not understand the terms of the contract. W&G therefore is bound by the mutually agreed upon terms of the April 12 agreement, which releases HCEDD from any liability pertaining to the condition of the property.

## II. Whether the trial court erred in awarding damages to W&G and Magnolia Label for the breach of contract.

¶21. Because HCEDD did not breach the April 12 agreement, the trial court erred in awarding damages to W&G. *See generally Indus. & Mech. Contractors of Memphis,* 962 So. 2d at 637 (¶15).

## CONCLUSION

¶22. The April 12 agreement created a contract between HCEDD and W&G. The trial court erred by finding that W&G and Magnolia Label had a viable breach-of-contract claim. Accordingly, we find that the trial court erred by entering a judgment against HCEDD. We reverse the judgment in favor of W&G and Magnolia Label, denying all relief sought by both parties, and render a judgment in favor of HCEDD as a matter of law.

¶23. **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY, FIRST**

12

**JUDICIAL DISTRICT, IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.**

**GRIFFIS, P.J., BARNES, ISHEE, FAIR, WILSON AND GREENLEE, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LEE, C.J., AND CARLTON, J., NOT PARTICIPATING.**